**Herbert WHITLOCK, Petitioner–Appellant,**

v.

**Salvador GODINEZ, Respondent–Appellee.**

No. 93–3731.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 12, 1995.

Decided March 9, 1995.

Thomas Peters (argued), Murphy, Peters & Davis, Chicago, IL, for petitioner-appellant.

Arleen C. Anderson, Asst. Atty. Gen., Office of the Atty. Gen. and Nancy L. Grauer (argued), Office of the Atty. Gen., Cr. Appeals Div., Chicago, IL, for respondent-appellee.

Before POSNER, Chief Judge, ROVNER, Circuit Judge, and MORAN, District Judge.[1]

MORAN, District Judge.

Petitioner Herbert Whitlock (Whitlock) appeals the denial of his petition for *habeas corpus* brought under 28 U.S.C. § 2254. The district court dismissed Whitlock's petition as a successive writ, concluding that the same issues were raised in an earlier habeas petition. Whitlock argues that the successive writ doctrine does not apply if there has never been an evidentiary hearing to resolve disputed facts, and that even if it is applicable his petition should nevertheless be heard since he has made a colorable showing of factual innocence. We affirm.

## I

### A. Whitlock's State Conviction

In the early morning hours of July 6, 1986, firefighters in Paris, Illinois, responded to a residential fire. When they entered the bedroom of the home they found the bodies of Karen and Dyke Rhoads. The cause of both deaths was hemorrhage due to multiple knife wounds. Investigators determined that after the Rhoads were murdered their killer set fire to their home, destroying much of the crime scene and making recovery of physical evidence nearly impossible. However, in the months that followed the murders two individuals, Debra Reinbolt and Darrel Herrington, came forward and claimed to have been at the Rhoads home the night of the murders. Both witnesses implicated Whitlock and his friend, Randy Steidl. Reinbolt testified that Whitlock was angry at Dyke Rhoads for trying to break off a drug deal and was obsessed with Karen Rhoads, who he allegedly claimed was his "dream girl." Reinbolt further testified that she was in the Rhoads home and witnessed Steidl kill Dyke Rhoads, and that she held Karen Rhoads down as the two men cut her throat. Whitlock was indicted for the two murders and was tried alone before a jury. At the trial, Whitlock was convicted of the murder of Karen Rhoads but was acquitted of the murder of Dyke Rhoads. He was later sentenced to a term of natural life.

1. The Honorable James B. Moran, Chief Judge of the Northern District of Illinois, is sitting by designation.

## B. Whitlock's Appeals and Petition For Post–Conviction Relief

Whitlock appealed his conviction to the Illinois Appellate Court, raising eleven issues as grounds for reversal. The court rejected each argument and affirmed the conviction. He then sought leave to appeal to the Illinois Supreme Court, but was denied.

After exhausting his direct appeals Whitlock filed a petition for collateral relief under the Illinois Post–Conviction Hearing Act. On September 15, 1989, the state filed a motion to dismiss that petition, which motion is still pending—no action having been taken at all in the case in over three years.

## C. Whitlock's First Habeas Petition

On March 6, 1990, Whitlock filed a writ of *habeas corpus, pro se,* under 28 U.S.C. § 2254, raising a number of issues with varying degrees of clarity. The district court, however, concluded that Whitlock's petition raised only one constitutional claim: that the evidence submitted at his state trial was insufficient to find him guilty beyond a reasonable doubt. The court denied the petition without an evidentiary hearing, specifically finding against Whitlock on the sufficiency-of-the-evidence argument. The district court also recognized that Whitlock's voluminous filings could be read to make out a number of claims of extrinsic fraud and concluded that they were without merit. Whitlock sought a certificate of probable cause from the district court to appeal the decision, but was denied. Whitlock then appealed to this court, which also denied the certificate. Whitlock's petition for *certiorari* was denied by the Supreme Court.

2. In his second petition, Whitlock claimed insufficient assistance of trial counsel. It was not clear whether this claim was raised in the first petition. The issue is ultimately immaterial since if the claim was made in the first petition it should be denied as a successive writ, and if it was not made, then Whitlock's failure to explain why it was not presented before constitutes an abuse of the writ, as the district court correctly found below. Whitlock continues to claim that the assistance-of-counsel argument was raised in the first petition. We agree with the district court that it is immaterial, but for simplicity's sake we will accept Whitlock's argument that the

## D. Whitlock's Second Habeas Petition

On June 8, 1992, Whitlock filed a second petition for *habeas corpus*—the petition that is on review here. The district court found that it raised the same issues as in the first petition and ordered Whitlock to show cause why the successive writ doctrine should not apply. Whitlock responded by arguing that that doctrine did not apply when the factual issues raised in the petition were not resolved at an evidentiary hearing. The district court rejected that argument and denied Whitlock's petition.[2] His request for a certificate of probable cause was rejected by the district court. However, his appeal to this court for a certificate of probable cause was granted.

## II.

### A. Ruling On the Merits

Whitlock's main argument is that the successive writ doctrine should not have been applied to deny his second habeas petition because the lack of an evidentiary hearing meant that the denial of his first habeas petition was not a ruling on the merits.[3]

Whitlock has failed to cite a single case directly supporting his claim. In the absence of any direct support Whitlock directs us to the language of 28 U.S.C. § 2244 and the Supreme Court's decision in *Sanders v. United States.*

It is well established that the doctrine of *res judicata* does not apply to state prisoner habeas petitions. *See Kelly v. United States,* 29 F.3d 1107, 1113 (7th Cir.1994). However, a modified version of *res judicata* is applied to habeas cases through 28 U.S.C. § 2244. That section, entitled "Finality of Determination," states in part:

claim was made and will treat this petition only as a successive writ case.

3. Appellee argues that Whitlock has waived this argument because he failed to successfully appeal the denial of his first habeas petition. We reject this waiver argument. Whitlock is not arguing that the denial of his first habeas petition was improper. Rather, he is arguing that the denial of his second petition, under the successive writ doctrine, is improper. This issue did not arise until the second petition.

When after an evidentiary hearing on the merits of a material factual issue, or after a hearing on the merits of an issue of law ... a person in custody pursuant to the judgment of a State court has been denied by a court of the United States ... release from custody or other remedy on an application for a writ of habeas corpus, a subsequent application for a writ of habeas corpus in behalf of such person need not be entertained by a court of the United States....

28 U.S.C. § 2244(b).

■ Whitlock reads § 2244(b) as requiring an evidentiary hearing on disputed factual issues before the successive writ doctrine can be applied. We disagree. All § 2244(b) states is that in the event an evidentiary hearing has been held, a court need not entertain a second petition raising the same issues. Nowhere does Congress delineate what is to happen in the event that no evidentiary hearing has been held and, since the statute is silent on this point, we look elsewhere for aid in interpreting § 2244(b). *See McCleskey v. Zant,* 499 U.S. 467, 487, 111 S.Ct. 1454, 1466–67, 113 L.Ed.2d 517 (1991) (where the Court held in a similar situation, that "[a]s was true of similar silences in the original 1948 version of § 2244 ... Congress did not intend § 2244(b) to foreclose application of the court-announced principles defining and limiting a district court's discretion to entertain abusive petitions").

■ In *Kuhlmann v. Wilson,* 477 U.S. 436, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986), the Court analyzed the language of § 2244(b), its legislative history, and the historic purpose of the habeas remedy, and held that a district court may hear a successive writ only if the petitioner "supplements his constitutional claim with a colorable showing of factual innocence." *Id.* at 454, 106 S.Ct. at 2627. Nowhere does the Court hold that a petitioner is entitled to reargue issues already heard and rejected, merely because no hearing was held. The Court's definitive

interpretation of the statute leaves no room to hold that § 2244(b) also requires a district court to hold a hearing on a habeas petition to ensure finality of that court's disposition of the petition. *See also McCleskey,* 499 U.S. at 491, 111 S.Ct. at 1468–69 (where the Court noted that "[f]inality has special importance in the context of a federal attack on a state conviction").[4]

Moreover, Whitlock's reading of the statute runs contrary to the legislative history surrounding the passage of the 1966 amendments to the habeas statutes, which included the enactment of § 2244(b). The legislative history reveals that Congress was attempting to preserve the integrity of the habeas remedy in the face of the sharp increase in the number of successive petitions clogging the federal courts. *See e.g.,* S.Rep. No. 1797, 89th Cong., 2d Sess., 2 (1966), U.S.Code Cong. & Admin.News 1966, pp. 3663, 3664. (the amendments are meant to introduce "a greater degree of finality of judgments in habeas corpus proceedings"); *id.* (finding that the increase in habeas filings was "unnecessary [since prisoners] have been filing applications containing allegations identical to those asserted in a previous application that has been denied, or predicated on grounds obviously well known to them when they filed the preceding application"); *see also* H.R.Rep. No. 1892, 89th Cong., 2d Sess., 5–6 (1966). Whitlock's reading of the statute completely thwarts this legislative intent.

■ In addition, Whitlock's reading of § 2244 is inconsistent with other provisions of the habeas statutory scheme. Section 2243 allows district courts to deny petitions before requiring the respondent to answer, if it appears from the face of the petition that the petitioner is not entitled to relief. Further, Rule 4 of the rules governing habeas cases authorizes district courts to summarily dismiss habeas petitions. It would be odd if Congress authorized courts summarily to dismiss meritless petitions, but then allowed the

---

4. The Supreme Court's decision in *Schlup v. Delo,* — U.S. —, —, 115 S.Ct. 851, 862–64, 130 L.Ed.2d 808 (1995), is also instructive. In *Schlup,* as here, the inmate's first habeas petition was denied without a hearing and his second petition was denied as a successive writ. Al-

though the Court did not address the precise issue that Whitlock raises here, it treated the petition before it as a successive petition. Thus, implicitly, the Court found that the denial of the inmate's first petition was a ruling on the merits even without an evidentiary hearing.

petitioner to bring those same arguments again because the summary dismissal did not afford the prisoner the opportunity to present evidence at a hearing.

Whitlock claims that the Supreme Court's opinion in *Sanders v. United States*, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963), requires reversal. In *Sanders,* the district court applied the successive writ doctrine to deny a federal prisoner habeas relief. The Supreme Court first established the general principle that a district court need not entertain a habeas petition that alleges the same grounds as a prior petition that was denied on the merits, provided that the court determines that the "ends of justice" would not be served by hearing the petition. *Id.* at 15–17, 83 S.Ct. at 1077–78. On the facts of the case before it the Court found that the denial of the prisoner's first petition was not on the merits because it "was merely a ruling that petitioner's pleading was deficient." *Id.* at 19, 83 S.Ct. at 1079.

■ *Sanders* does not require a district court to hold an evidentiary hearing to ensure that its denial of a habeas petition is a ruling on the merits. *Sanders* was decided before § 2244(b) was enacted and therefore must be read in conjunction with that statute, its legislative history, and the more recent cases analyzing the language. In addition, the prisoner in *Sanders* was allowed a hearing because his first petition was dismissed as a deficient pleading. Denial of petitions for reasons tangential to the grounds argued for relief, such as for deficient pleading, improper venue, and failure to exhaust state remedies, are not properly considered a ruling on the merits. That is of course a long way from concluding that a denial of a petition, after consulting all the exhibits and documents, is not a ruling on the merits merely because the court did not hold an evidentiary hearing. The district court considered the issues raised by the first petition and found them meritless. In so doing, we are satisfied that the court made a ruling on the merits.

## B. *Actual Innocence*

Whitlock also argues that even if the successive writ doctrine is applicable to his peti-tion, the district court should have invoked its equitable power under the habeas remedy to nevertheless entertain his successive claims.

■ The Supreme Court has consistently "adhered to the principle that habeas corpus is, at its core, an equitable remedy." *Schlup v. Delo*, — U.S. —, —, 115 S.Ct. 851, 863, 130 L.Ed.2d 808 (1995). The concern to preserve the equitable nature of the habeas remedy has led the Court in a series of decisions to refrain from applying strict rules of *res judicata. See Kuhlmann,* 477 U.S. at 454, 106 S.Ct. at 2627; *McCleskey,* 499 U.S. at 495, 111 S.Ct. at 1471. Instead, the Court has held that a district court should hear a successive writ if failing to do so would be "a fundamental miscarriage of justice." *Murray v. Carrier,* 477 U.S. 478, 495–96, 106 S.Ct. 2639, 2649–50, 91 L.Ed.2d 397 (1986). The Court has limited this exception to the "rare" situation in which "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Kuhlmann,* 477 U.S. at 496, 106 S.Ct. at 2649. The "actual innocence" exception existed without a definitive interpretation until the Court's very recent decision in *Schlup v. Delo,* — U.S. —, —, 115 S.Ct. 851, 862–64, 130 L.Ed.2d 808 (1995). In *Schlup,* the Court held that to entertain a successive petition the district court must be persuaded that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* — U.S. at —, 115 S.Ct. at 867.

To supplement his claim of actual innocence, Whitlock has attacked the prosecution's case with evidence that was submitted at his trial and supposedly new evidence probative of his innocence. At trial, Whitlock demonstrated that the prosecution's main witnesses, Reinbolt and Herrington, *were both drug addicts who told inconsistent stories to the police and whose testimony concerning their prior relationships with him was impeached by other individuals.* Whitlock submitted evidence indicating that Reinbolt was at work the night of the murders and could not have witnessed the killings; he also had witnesses who corroborated his alibi. Whitlock also relies on supposedly "new

evidence" that was not presented by his trial counsel. Much of this new evidence is impeachment evidence of the state's witnesses and concerns who saw whom or what, at what bar.[5] Whitlock also alleges that neighbors of the Rhoads would have testified that they did not hear anything unusual in the neighborhood at the alleged time of the murders. Finally, Whitlock alleges that Reinbolt and Herrington both received reward money, a fact that was not revealed to the jury and would have presumably provided some incentive for the witnesses to lie.

After considering all of the evidence we find that Whitlock has failed to demonstrate that "it is more likely than not that no reasonable juror would have convicted him...." *See Schlup,* —— U.S. at ——, 115 S.Ct. at 867. *Schlup* counsels the trial court and us to consider all the evidence, including evidence bearing upon credibility that was purportedly unavailable. *Schlup,* —— U.S. at —— and ——, 115 S.Ct. at 866 and 867. Here the jury was well aware of serious attacks upon the credibility of the two principal witnesses against Whitlock. The new evidence adds to that baggage but it does not persuasively explain how those witnesses could have known significant facts that they presumably could not have known unless they were at the crime scene. Reinbolt's and Herrington's testimony of the crime scene was corroborated by the fire investigators, their account of Whitlock's relationship with the Rhoads was corroborated by other witnesses, and Reinbolt adequately rebutted Whitlock's claim that she was at work the night of the murders. In addition, Whitlock's "new evidence" does not seriously call into doubt the core of the state's case. The neighbor's testimony that he heard nothing unusual around the alleged time of the murders, the bartender's testimony that he does not remember seeing Steidl in his bar that night, and the testimony regarding the reward money, while perhaps somewhat probative, are certainly not any direct evidence of Whitlock's innocence that would allow us to conclude that it is likely that no reasonable juror would have found him guilty beyond a reasonable doubt. Further, this new evidence does not undercut Whitlock's highly damaging admissions, about which two witnesses testified.[6] Since Whitlock has failed to make a threshold showing of his innocence, the district court's decision not to hear his successive claims did not constitute a fundamental miscarriage of justice.

### III.

Because the denial of Whitlock's petition was a ruling on the merits, and because Whitlock cannot meet the exception to the successive writ doctrine, the district court was correct in denying Whitlock's second petition for habeas relief. The district court's decision is affirmed.

---

5. For example, Whitlock claims that John Fleming would have testified that he never saw Steidl and Reinbolt together at a local tavern called the Tap Room, which would have contradicted portions of Reinbolt's testimony.

6. Carol Arbuckle, Whitlock's girlfriend, testified that Whitlock warned her that "something big and bad" was going to happen over the July 4th weekend and later informed her that Steidl had been the killer. *People v. Whitlock,* 174 Ill. App.3d 749, 124 Ill.Dec. 263, 268–69, 528 N.E.2d 1371, 1376–77 (4th Dist.1988). Also, Ruth Murphy testified that three months after the murders Whitlock was crying and was upset that Karen Rhoads had been stabbed 26 times and "would have gurgled when she died." *Id.* 124 Ill.Dec. at 269, 528 N.E.2d at 1377.