Leantry BENTON, Petitioner,

v.

Odie WASHINGTON, Respondent.

No. 96–8070.

United States Court of Appeals, Seventh Circuit.

Submitted Dec. 3, 1996.

Decided Dec. 10, 1996.

Thomas Peters, (submitted), Murphy, Peters & Davis, Chicago, IL, for petitioner.

Michael M. Glick, Office of the Attorney General, Chicago, IL, for respondent.

Before COFFEY, FLAUM, and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

Four years ago, Leantry Benton took the first step toward a federal collateral attack on his state confinement. Benton tendered a petition for a writ of habeas corpus under 28 U.S.C. § 2254 but did not pay the $5 filing fee. The district court concluded that Benton, who then had more than $50 in his prison trust account and $250 per month in income, must pay the paltry fee. Apparently Benton had little hope of prevailing, for he declined to pay even $5 for an opportunity to regain his freedom. The judge dismissed his petition in November 1992. By July 1996, when Benton filed another, the law had changed. Section 6 of the Anti-terrorism and Effective Death Penalty Act, Pub.L. 104–132, 110 Stat. 1214 ("the Act"), amends 28 U.S.C. § 2244 to forbid any "second or successive" petition for collateral relief without the consent of the court of appeals, which may be given only in limited circumstances. Benton filed his second petition in the district court without seeking this court's leave. The district court dismissed it for want of jurisdiction, relying on *Nuñez v. United States*, 96 F.3d 990 (7th Cir.1996), which holds that a prisoner must seek our leave under § 2244(b)(3)(A) before filing any second or successive petition even if, as a result of *Burris v. Parke*, 95 F.3d 465, 467–69 (7th Cir.1996) (en banc), the substantive standards of § 2244(b)(1) and (2) do not apply.

Now represented by counsel, Benton has asked us for leave to commence his § 2254 action. He argues that the Act does not govern, but for reasons explained in *Nuñez* and *Roldan v. United States*, 96 F.3d 1013 (7th Cir.1996), the amended § 2244 must be used, just as the Supreme Court employed it in *Felker v. Turpin*, —— U.S. ——, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996). Some provisions of the Act are not yet in full force; for example, the filing deadline that the Act added to § 2244(d) does not forbid Benton's petition. See *Lindh v. Murphy*, 96 F.3d 856, 866 (7th Cir.1996) (en banc). But § 2244(b), which replaces the doctrine of "abuse of the writ" under Rule 9(b) of the Rules Governing Section 2254 Cases in the United States District Courts, applies to all cases unless the petitioner demonstrates the sort of detrimental reliance on prior law present in *Burris*.

Benton does not argue that his current petition satisfies the statutory conditions for a second or successive petition. What he does contend is that this is his *first* petition. His 1992 petition was dismissed on procedural grounds; indeed, because he refused to pay the $5 fee, it was not filed at all. See *Williams–Guice v. Chicago Board of Education*, 45 F.3d 161 (7th Cir.1995). A non-decision on an un-filed petition does not count as a first petition, he submits.

Benton first asks us to hold that a petition should be treated as the initial one whenever sequential filings would have been proper under *Sanders v. United States*, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963). That can't be so. *Sanders* predated the abuse-of-the-writ standard in Rule 9(b), and it was not authoritative even before the new Act. See *Lonchar v. Thomas*, —— U.S. ——, 116 S.Ct. 1293, 134 L.Ed.2d 440 (1996); *McCleskey v. Zant*, 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991). The Act tightens the standards still further, as the Court remarked in *Felker*, —— U.S. at ——, 116 S.Ct. at 2340. The practical extent of the change remains to be seen, but it is out of the question to use *Sanders* as the benchmark for operation of the current law.

Section 2244(b) uses, but does not define, the phrase "second or successive habeas corpus application". These words could be read to encompass Benton's, for the document he filed in 1992 plainly was an application for habeas corpus, and the document he wants to file in 1996 is another. If the statutory words refer to the document the prisoner

files (with a stress on *application*), rather than to the court's disposition of that application, then Benton is out of court today. But we are reluctant to read the phrase that way. Its genesis is Rule 9(b), which provides that "[a] second or successive petition may be dismissed if ... it fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, ... the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ." The 1996 legislation jettisons the concept of "abuse of the writ" in favor of more-restrictive standards; it preserves the concept of the "second or successive petition." Those words therefore retain the meaning they had under Rule 9(b). Accord, *Camarano v. Irvin*, 98 F.3d 44 (2d Cir.1996).

▮ What, then, was a "second or successive petition" under Rule 9(b)? The rule's structure implies that a proceeding should be treated as an initial filing even if it does not end in decision on the merits; why else refer to a "second or successive petition ... [when the] prior determination was on the merits"? If lack of a "merits" determination meant that the initial application did not count as the first petition, then it would not be possible to refer to the next one as a "second or successive petition". Every day courts enter orders that have strong legal effects even though they do not address the merits of the parties' controversy. Suppose a civil action is commenced but dismissed for want of prosecution or failure to cooperate in discovery; although the court never reaches "the merits," the dismissal will preclude a second filing. *Kimmel v. Texas Commerce Bank*, 817 F.2d 39 (7th Cir.1987). Or suppose the plaintiff in a civil case dismisses the suit under Fed.R.Civ.P. 41(a)(1). If dismissal precedes service of process, the plaintiff is free to refile; but if the step comes later, or is repeated, then the voluntary dismissal can preclude further litigation. No legally sophisticated person would say that the second complaint was not really a "second or successive" one, and that doctrines of preclusion did not apply, just because the first one ended short of a decision on the merits. So

too, we think, with petitions for writs of habeas corpus.

Although a decision on the merits therefore is not essential to the existence of a first or initial petition, some deficient petitions were not treated as initial applications for purposes of Rule 9(b). When, for example, a petition was dismissed for failure to exhaust state remedies, no court treated the renewal of the claim after exhaustion as a second petition. See, e.g., *Hamilton v. Vasquez*, 882 F.2d 1469, 1473 (9th Cir.1989); *Jones v. Estelle*, 722 F.2d 159, 168 (5th Cir.1983) (en banc). The sequence of filing, dismissal, exhaustion in state court, and refiling in federal court might generate multiple docket numbers, but it would not be right to characterize it as successive collateral attacks. The prisoner launched a single campaign; that skirmishes were spread across several years and two forums would not make it apt to call any of the steps a "successive" collateral attack. It is one challenge with multiple stages. We agree with *Hamilton* and *Jones*—and with the holding of *Camarano* that the principle is equally applicable under § 2244(b). For the same reasons, the filing and rejection of a petition as unintelligible or poorly developed does not make the filing of an enlarged specification a "second or successive" petition; it is better to think of the process as one of filing, rejection, and amendment. See *Dellenbach v. Hanks*, 76 F.3d 820 (7th Cir.1996); *Whitlock v. Godinez*, 51 F.3d 59 (7th Cir. 1995). Questions of characterization may prove complex—was the petition really "returned" on pleading grounds (see Rule 2(e) of the § 2254 Rules), or was it dismissed as substantively frivolous? That difference is grave under § 2244(b), but it also mattered under Rule 9(b), and we cannot see any reason to change the fundamental nature of the inquiry when the statutory terminology has remained constant.

▮ None of these difficulties need detain us, however. The distinction between a "returned" and an unsuccessful petition shows that papers tendered to the clerk do not necessarily count as "petitions" or "applications" for collateral relief just because they come over the transom. Rule 2(e) says that a petition will be returned to the petitioner if it "does not substantially comply with the requirements of rule 2 or rule 3." Payment

of the filing fee, or a grant of leave to proceed *in forma pauperis,* is one of the requirements in Rule 3(a). The district court held that Benton was not entitled to proceed IFP in 1992, and he did not pay the fee. Noncompliance with Rule 3(a) meant that the papers were or should have been "returned" under Rule 2(e). Although the district court entered in 1992 a document purporting to be a Rule 58 judgment, reciting "this case is dismissed", an order of this form was inapt. The petition had not been filed, and it therefore could not be dismissed. Departure from the lingo of Rule 2(e) does not change the nature of the events, however: the documents tendered in 1992 were returned, so Benton's filing in 1996 is his first for purposes of § 2244(b). Any petition returned under Rule 2(e) should be disregarded for purposes of § 2244(b), as should any petition dismissed to permit exhaustion; but any other outcome is presumptively sufficient to bring § 2244(b) into play.

Our conclusion, like that of the second circuit in *Camarano,* brings to light a potential difficulty in the implementation of § 2244(b) and the parallel amendment to 28 U.S.C. § 2255. Anyone who files a "second or successive" application must start in the court of appeals, and any effort to begin in the district court must be dismissed for want of jurisdiction, see *Nuñez,* or transferred to the court of appeals under 28 U.S.C. § 1631. An initial application must begin in the district court, and any filing here exceeds our jurisdiction. But if on occasion a document that is *factually* the second petition is *legally* the first, where is the petitioner to go? A filing in the district court is apt to be dismissed, if the district judge concludes that the petition is a "second or successive" one; a filing in the court of appeals is apt to be dismissed, if the court of appeals concludes that the petition should be treated as the initial collateral attack; and if the district and appellate judges disagree, the petition can bounce around for months before the prisoner has any opportunity to ask for relief on the merits. All three of these events have come to pass in Benton's case. Perhaps the worst outcome would be a filing in the district court, which determines that the petition is an "initial one," followed by a decision on the merits, an appeal, and a conclusion by the court of appeals that the application must be dismissed for want of jurisdiction because it is a second or successive petition, for which appellate leave was required in advance. Today's decision should reduce the scope of uncertainty.

■ Prudent counsel in cases where any doubt remains will begin in the court of appeals, because an order of the kind we are about to enter will not harm the case, or much delay it—for the court of appeals must act within 30 days of the application, § 2244(b)(3)(D), and Circuit Rule 22.2 establishes an expedited process. Most prisoners, however, lack prudent (or any other) counsel. A prudent legislature may wish to consider, therefore, whether the statutory division of authority between tribunals is appropriate. Assessing the wisdom of § 2244(b) as it stands is not our function, but copies of this opinion will be sent to the appropriate officials in Congress so that the legislature is made aware of the potential for duplication and delay.

The motion is denied as unnecessary. Benton is free to refile his collateral attack in the district court, which should treat it as an initial petition.