**Donald Kenneth CARLSON, Petitioner–Appellee,**

v.

**Terry PITCHER, Warden, Respondent– Appellant.**

No. 96–2520.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 27, 1997.

Decided Feb. 25, 1998.

Kathleen Davison Hunter, Asst. Attorney Gen. (argued and briefed), Arthur E. D'Hondt, Office of Attorney General, Habeas Corpus Division, Lansing, MI, for Respondent–Appellant.

Donald Kenneth Carlson, Muskegon, MI, pro se, Victor L. Bland (argued and briefed), Kalamazoo, MI, for Petitioner–Appellee.

Before: RYAN, BATCHELDER, and CLAY, Circuit Judges.

## OPINION

RYAN, Circuit Judge.

The petitioner, Donald Kenneth Carlson, a state court inmate, filed a petition for a writ of *habeas corpus* in the federal court in July 1996. This was the second time he had done so, having had his first petition, filed in 1990, dismissed without prejudice in 1993 due to his failure to exhaust state remedies. The respondent, Warden Terry Pitcher, filed a motion to dismiss the 1996 petition, arguing that the district court had no subject-matter jurisdiction because the 1996 petition was a "second or successive application" within the meaning of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (1996), for which Carlson had not obtained leave from this court. The district court denied the State's motion, and certified its order for interlocutory appeal. We shall affirm.

### I.

In 1985, Carlson was convicted of first-degree murder and sentenced to life without parole. In 1990, Carlson filed a 28 U.S.C. § 2254 *habeas corpus* petition raising a number of claims. In November 1993, this petition was dismissed without prejudice following a magistrate judge's conclusion that Carlson was "attempting to raise at least four federal issues never asserted in the state courts."

Carlson returned to the state courts in order to exhaust his claims; we, of course, have no way of knowing at this juncture whether Carlson actually succeeded in exhausting his claims, and that issue is not now before us. In any event, in July 1996—some three months after AEDPA became effective—Carlson again filed a petition for *habeas corpus*, this time raising 11 claims. He did not first seek an order of authority from this court, which, under AEDPA, is required when a *habeas* petitioner wishes to bring a "second or successive application." 28 U.S.C. § 2244(b)(3)(A).

The State then filed a motion to dismiss on the ground that Carlson's petition was a "second or successive application" within the meaning of AEDPA, and that therefore, per-

mission from this court was required. The district court, however, concluded that the new petition, because it was filed after the first petition was dismissed without prejudice for lack of exhaustion, was not in fact a "second or successive" petition.

The district court certified its order for interlocutory appeal under 28 U.S.C. § 1292(b), and we granted the petition for permission to appeal.

## II.

■ Title I of AEDPA amended in various ways chapter 153 of Title 28 of the United States Code, which empowers federal courts to grant writs of *habeas corpus*. Pertinent to this case are the restrictions on second or successive *habeas* applications, and associated "gatekeeping" provisions. Specifically, subsections 106(b)(1)-(3) of AEDPA amend 28 U.S.C. § 2244(b) to read, in part, as follows:

**(b)(1)** A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.

**(2)** A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless—

**(A)** the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

**(B)(i)** the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

**(ii)** the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

**(3)(A)** Before a second or successive application permitted by this section is filed in the district court, the applicant shall

move in the appropriate court of appeals for an order authorizing the district court to consider the application.

"A three-judge panel has 30 days to determine whether 'the application makes a prima facie showing that the application satisfies the requirements of' § 106(b)," and its decision regarding authorization is not appealable. *Felker v. Turpin*, 518 U.S. 651, ——, 116 S.Ct. 2333, 2337, 135 L.Ed.2d 827 (1996) (quoting 28 U.S.C. § 2244(b)(3)(C); citing § 2244(b)(3)(B), (D), (E)). The requirement that a *habeas* petitioner "obtain leave from the court of appeals before filing a second habeas petition in the district court ... simply transfers from the district court to the court of appeals a screening function which would previously have been performed by the district court." *Id.* at ——, 116 S.Ct. at 2340. The Supreme Court characterized "[t]he new restrictions on successive petitions" as "a modified res judicata rule, a restraint on what is called in habeas corpus practice 'abuse of the writ.'" *Id.*

In the district court, the State's argument was straightforward, if somewhat simplistic: Carlson filed a petition for *habeas corpus* in 1990, and therefore, his 1996 petition must necessarily be a "second or successive" petition, requiring leave from this court. The argument it raises in this court, however, is different: that Carlson's 1996 petition became a "second or successive application" because it included six new claims that had not been part of his 1990 petition. It contends that when one petition is dismissed for failure to exhaust and then resubmitted with the old claims *as well as* new claims, it amounts to a second or successive petition. Rather than explaining its theory that the additional claims somehow convert the petition into a "second" petition, the State just sets forth its position as a truism: "Clearly, Petitioner is bringing a second habeas petition by attaching new claims to those previously raised in the first petition and he should not be relieved from the gatekeeping provisions because of a failure to initially exhaust."

Although building on established *habeas* doctrine, AEDPA did not define what it meant by "second or successive" applications.

*See Camarano v. Irvin,* 98 F.3d 44, 45–46 (2d Cir.1996) *(per curiam ).* Thus, one of the issues implicated by this appeal is how the same set of circumstances would have been treated pre-AEDPA. This court, however, has no published pre-AEDPA opinions on point. *But see Fugett v. Marshall,* No. 84–3694, 1986 WL 16541, at *1 (6th Cir.1986). Case law from our sister circuits, on the other hand, indicates a universal approach: a second-in-time *habeas* petition was not dismissed as an abuse of the writ when its filing followed a dismissal of the first-in-time petition on exhaustion grounds. The explanation was twofold: (1) any other result would render *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982)—in which the Court held that the exhaustion requirement of section 2254(b) requires the dismissal of mixed petitions—meaningless, and (2) this approach accords with the decisions holding that a dismissal for failure to fulfill a required precondition does not bar a later filing when the precondition *has* been fulfilled. Thus, as the Second Circuit has noted, "[p]rior to the AEDPA amendments, a petition filed after a previously submitted petition was dismissed without prejudice was not considered an abuse of the writ." *Camarano,* 98 F.3d at 46 (citing cases); *accord In re: Gasery,* 116 F.3d 1051, 1052 (5th Cir.1997) *(per curiam );* *Christy v. Horn,* 115 F.3d 201, 208 (3d Cir.1997); *Benton v. Washington,* 106 F.3d 162, 164 (7th Cir.1996).

Not surprisingly, then, in light of this history, every court addressing the issue since AEDPA took effect has held that "a habeas petition filed after a prior petition is dismissed without prejudice for failure to exhaust state remedies does not qualify as a 'second or successive' application within the meaning of § 2244(b)(1)." *McWilliams v. State of Colorado,* 121 F.3d 573, 575 (10th Cir.1997); *accord Gasery,* 116 F.3d at 1051; *Christy,* 115 F.3d at 208; *Benton,* 106 F.3d at 164; *In re Turner,* 101 F.3d 1323, 1323 (9th Cir.1996); *Dickinson v. State of Maine,* 101 F.3d 791, 791 (1st Cir.1996); *Camarano,* 98 F.3d at 45–46. In so concluding, courts have employed several different rationales. The *McWilliams* court characterized the later petition as "simply a continuation of the earlier petition." *McWilliams,* 121 F.3d at

575; *accord Gasery,* 116 F.3d at 1052. Other courts have rested their decisions on policy rationales, holding that "application of the gatekeeping provisions to deny a resubmitted petition in cases such as this would effectively preclude any federal habeas review and thus, would conflict with the doctrine of writ abuse, as understood both before and after *Felker,*" and that, "absent more direct evidence of Congress's intent," such a position must be rejected. *Camarano,* 98 F.3d at 46. The *Camarano* court also emphasized that the historical bases for the abuse-of-the-writ doctrine—comity and the need for finality—were simply not "implicated when a petition is filed after a prior petition is dismissed without prejudice for failure to exhaust state remedies." *Id.; accord Christy,* 115 F.3d at 208; *Dickinson,* 101 F.3d at 791. Still other courts have not purported to explain their conclusions. *See Turner,* 101 F.3d at 1323.

In the most extended discussion on the subject, the Seventh Circuit emphasized that the key feature of the analysis was *not* an "on the merits" determination. *Benton,* 106 F.3d at 164. Many cases end "short of a decision on the merits," wrote the *Benton* court, and yet have preclusive effect. *Id.* But when a petition is dismissed for failure to exhaust and another petition is later filed, it is simply not a "second" petition:

> The sequence of filing, dismissal, exhaustion in state court, and refiling in federal court might generate multiple docket numbers, but it would not be right to characterize it as successive collateral attacks. The prisoner launched a single campaign; that skirmishes were spread across several years and two forums would not make it apt to call any of the steps a "successive" collateral attack. It is one challenge with multiple stages.... For the same reasons, the filing and rejection of a petition as unintelligible or poorly developed does not make the filing of an enlarged specification a "second or successive" petition; it is better to think of the process as one of filing, rejection, and amendment.

*Id.*

As we have noted, the respondent has not properly preserved the argument he advances to this court. We shall nonetheless

address it, if only because the answer to that argument is the same as the answer to the argument he *did* raise below.

■ We join with every other court to consider the question, and hold that a *habeas* petition filed after a previous petition has been dismissed on exhaustion grounds is not a "second or successive" petition implicating the pre-filing requirement of obtaining an order of authority from the court of appeals. Further, the very sound rationales supporting this result are not altered by the additional consideration that the second-in-time petition may contain new *habeas* claims not presented in the first petition. Indeed, in our view, the standard advanced by the respondent makes no sense. AEDPA attempts to ensure that a State inmate will have just one shot at a federal *habeas* proceeding, barring exceptional circumstances; given that the second-in-time petition is not a "second" petition if it is identical to the first-in-time petition that is rejected for non-exhaustion, we can see no reason why that shot should be entirely foreclosed because a petitioner, after his first aborted proceedings, articulates additional arguments as to why his confinement is unconstitutional.

### III.

**AFFIRMED.**