**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| TONY GOODRUM, *Petitioner-Appellant*, | No. 13-55010 |
| v. | D.C. No. 3:11-cv-02262-IEG-JMA |
| TIMOTHY E. BUSBY, Warden, *Respondent-Appellee.* | OPINION |

Appeal from the United States District Court
for the Southern District of California
Irma E. Gonzalez, Senior District Judge, Presiding

Argued and Submitted January 5, 2016
Pasadena, California

Filed June 9, 2016

Before: Milan D. Smith, Jr., Paul J. Watford,
and Michelle T. Friedland, Circuit Judges.

Opinion by Judge Watford

## SUMMARY[*]

### Habeas Corpus

Reversing the district court's dismissal of a habeas corpus petition, the panel held that the petition was not "second or successive," and the petitioner was not required to meet the standard for obtaining relief under 28 U.S.C. § 2244(b).

The panel held that, just as a new petition filed in the district court while a first petition remains pending is not second or successive, a new petition filed in the court of appeals while a first petition remains pending also is not a second or successive petition subject to the stringent standard set forth in § 2244(b).

### COUNSEL

Tony Faryar Farmani (argued), Farmani, APLC, San Diego, California, for Petitioner-Appellant.

Kevin Vienna (argued), Supervising Deputy Attorney General; Kamala D. Harris, Attorney General of California; Gerald A. Engler, Chief Assistant Attorney General; Office of the Attorney General, San Diego, California, for Respondent-Appellee.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**OPINION**

WATFORD, Circuit Judge:

Tony Goodrum is a California state prisoner serving a 21-year sentence for voluntary manslaughter. The district court denied his petition for a writ of habeas corpus under 28 U.S.C. § 2254. The court held that Goodrum's petition constituted a "second or successive" petition under 28 U.S.C. § 2244(b), and that he failed to meet that statute's stringent standard for obtaining relief. Goodrum argues that he should not have been required to meet § 2244(b)'s stringent standard because his petition is not, in fact, "second or successive." We agree with Goodrum.

I

Because the facts underlying Goodrum's conviction are not directly relevant to this appeal, a brief summary will suffice. The State charged Goodrum with murder after he shot and killed an acquaintance of his, Dwayne Stamps, during a heated argument in the garage of Goodrum's home. At trial, Goodrum testified that he shot Stamps in self-defense when Stamps charged at him armed with a metal pipe. The key contested issue at trial was whether Stamps actually had a metal pipe in his hands at the time Goodrum shot him. Police officers found a metal pipe under Stamps' body at the crime scene, but investigators recovered only a partial print from the pipe that could not be matched to anyone present in the garage. The prosecution's case rested to a significant extent on testimony from four individuals who saw all or part of the encounter between Goodrum and Stamps. Each of them testified that they did not see Stamps with a metal pipe in his hands. The jury convicted Goodrum of voluntary

manslaughter, most likely on the theory that he acted in self-defense but that his belief in the need for use of deadly force was objectively unreasonable.

Following his conviction, Goodrum unsuccessfully pursued a direct appeal in the California appellate courts challenging mainly the jury instructions given at trial. Goodrum then filed a series of habeas corpus petitions in state court that asserted, as relevant here, claims of police and prosecutorial misconduct and ineffective assistance of counsel. Those claims were predicated on allegations that officers had mishandled the metal pipe found at the crime scene (thereby destroying potentially recoverable prints); and on an affidavit from Howard Herring, one of the four witnesses mentioned above, who asserted that Stamps had in fact been armed with a metal pipe but that the police and prosecutor had coerced him into providing false testimony at trial by threatening him with criminal charges if he refused to cooperate with them. Goodrum claimed that he received ineffective assistance of counsel because his trial lawyer failed to investigate and expose this misconduct.

The state trial court and Court of Appeal denied habeas relief on these claims. To exhaust the remedies available in state court, Goodrum filed another habeas petition raising the same claims in the California Supreme Court.

In April 2007, while his habeas petition remained pending before the California Supreme Court, Goodrum filed a *pro se* habeas petition in federal court raising only the claims he had already exhausted on direct appeal. Less than two months later, on June 13, 2007, the California Supreme Court denied relief, rendering his claims for police and prosecutorial misconduct and ineffective assistance of counsel exhausted.

On June 20, 2007, Goodrum sought to add these newly exhausted claims to his federal habeas proceeding. But instead of filing a motion in the district court to amend his pending federal habeas petition, Goodrum filed in our court an "Application for Leave to File Second or Successive Petition." As is customary, he attached to his application the new habeas petition he sought leave to file.

Goodrum thought he needed our court's permission to file the new petition because state prisoners must obtain authorization from the court of appeals before filing a "second or successive" petition in the district court. 28 U.S.C. § 2244(b)(3)(A). Goodrum assumed, not unreasonably for a lay person, that he needed to obtain such authorization because he had already filed one federal petition two months earlier. But, as we will explain shortly, Goodrum's new petition was not a "second or successive" petition as that term is used in § 2244. He did not need our court's permission to file it; he could have filed it in the district court straight away. Instead of telling Goodrum that, though, we issued an order in September 2007 that stated the following:

> This application for authorization to file a second or successive 28 U.S.C. § 2254 habeas corpus petition in the district court is denied without prejudice to refiling should petitioner receive an unfavorable disposition of the first petition that is currently pending in the district court.

Goodrum understandably interpreted this order to mean, not that his request for leave to file the new petition was unnecessary, but rather that it was premature, in the sense that

he needed to finish litigating his pending April 2007 petition before our court would consider the application. Goodrum read the order to say that he could return to our court and renew his request for leave to file the new petition if he failed to win relief on the claims raised in his first petition. Goodrum followed that course of action. He litigated the claims raised in his April 2007 petition, and the district court ultimately denied relief. On appeal, our court affirmed. We denied Goodrum's petition for rehearing en banc on September 3, 2010, and the Supreme Court subsequently denied his petition for certiorari.

On October 29, 2010, as instructed, Goodrum returned to our court and refiled his "Application for Leave to File Second or Successive Petition." In his application, Goodrum noted that the September 2007 order had said he could refile his application if he received an unfavorable disposition of his first petition. "Now that this has happened," he wrote, "Petitioner now renews his Application in compliance with that order." On August 31, 2011, we granted him leave to file the new petition.

On September 23, 2011, Goodrum filed his new habeas petition in the district court. On December 1, 2011, he amended that petition with the district court's permission. (The claims alleged in the December 2011 petition are not identical to the claims alleged in the petition Goodrum sought leave to file back in June 2007. We address the implications of that fact at the end of this opinion.)

The district court dismissed the new petition with prejudice. The court began by rejecting Goodrum's argument that his petition should not be deemed "second or successive" at all. That classification matters because a petitioner raising

new claims in a second or successive petition must meet a more demanding standard to obtain relief than the standard applicable to claims raised in a first petition. *See* 28 U.S.C. § 2244(b)(2). Goodrum argued that our court had erred by denying his earlier application in September 2007. Rather than denying the application, Goodrum asserted, we should have construed it as a request to amend his then-pending April 2007 petition and transferred the new petition, which he had attached to his application, to the district court. His claims would then have been reviewed, along with his other pending claims, under the less demanding standard applicable to first petitions. *See* 28 U.S.C. § 2254(d)–(e). As Goodrum pointed out, we held less than a year after issuing the September 2007 order that when a *pro se* petitioner files a new petition in the *district court* while an earlier-filed petition is still pending, the district court must construe the new petition as a motion to amend the pending petition rather than as an unauthorized second or successive petition. *Woods v. Carey*, 525 F.3d 886, 887–90 (9th Cir. 2008).

The district court held that *Woods v. Carey* applies only when a *pro se* petitioner files a new petition in the district court—not, as in this case, when the petitioner files his new petition in the court of appeals. The district court concluded that Goodrum therefore had to meet the more demanding standard applicable to second or successive petitions, and that he could not do so. The court nonetheless granted Goodrum a certificate of appealability on his claims for police and prosecutorial misconduct and ineffective assistance of counsel.

II

Section 2244(b) states that "[a] claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed," subject to two narrow exceptions (one requiring reliance on a new rule of constitutional law made retroactive to cases on collateral review, the other requiring proof of newly discovered facts). 28 U.S.C. § 2244(b)(2).[1] Congress added this provision as part of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub. L. No. 104–132, § 106(b), 110 Stat. 1214, 1220–21. Its purpose was to codify, in modified form, the judge-made "abuse of the writ" doctrine that federal courts had devised to combat serial filings by

---

[1] Section 2244(b)(2) provides:

> A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless—
>
> (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
>
> (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

habeas petitioners.  *See Felker v. Turpin*, 518 U.S. 651, 664 (1996).  The doctrine developed around the premise that habeas petitioners should generally be "entitled to one, but only one, full and fair opportunity to wage a collateral attack." *Beyer v. Litscher*, 306 F.3d 504, 508 (7th Cir. 2002) (quoting *O'Connor v. United States*, 133 F.3d 548, 550 (7th Cir. 1998)).  Petitioners seeking habeas relief were thus required to conduct a diligent investigation before filing so that all reasonably available claims could be included in their first petition. *McCleskey v. Zant*, 499 U.S. 467, 490–91, 498 (1991); *see Johnson v. United States*, 196 F.3d 802, 805 (7th Cir. 1999).  Claims raised in a second or successive petition were subject to dismissal as an abuse of the writ.  *Slack v. McDaniel*, 529 U.S. 473, 486 (2000).

The pre-AEDPA abuse-of-the-writ doctrine required courts to answer two distinct questions:  Is the petition at issue second or successive; and if so, should it be dismissed as an abuse of the writ?  To answer the former question, courts developed a set of rules to determine when a numerically second (or third, or fourth, etc.) petition should be deemed second or successive.  To answer the latter question, courts developed a standard, which evolved over time, to determine when a petition properly classified as second or successive should be dismissed as an abuse of the writ.  At the time of AEDPA's enactment, that standard required courts to dismiss claims asserted in a second or successive petition unless the petitioner could show either "cause and prejudice" (basically a legitimate excuse for not raising the claims in an earlier petition) or a fundamental miscarriage of justice (that is, a showing of probable innocence). *McCleskey*, 499 U.S. at 493–94.

When Congress enacted AEDPA, it changed the standard used to determine when a petition properly classified as second or successive should be dismissed as an abuse of the writ. *See* 2 Randy Hertz & James S. Liebman, Federal Habeas Corpus Practice and Procedure § 28.3[e], at 1725 (7th ed. 2016) (Hertz & Liebman). Under AEDPA's new standard, if a second or successive petition presents claims that were already raised in an earlier petition and denied on the merits, those claims must be dismissed, period. 28 U.S.C. § 2244(b)(1). If a second or successive petition presents new claims that were not previously raised, those claims must be dismissed as well, unless the petitioner meets the stringent standard mentioned above requiring reliance on a new rule of constitutional law or proof of newly discovered facts. § 2244(b)(2).

Congress did not, however, alter the set of rules federal habeas courts had developed to determine whether a petition is second or successive. Section 2244(b) incorporates the phrase "second or successive," and by its terms applies only to claims raised in a "second or successive" petition, but Congress did not attempt to define what "second or successive" means. So courts have naturally assumed that the term carries the same meaning it did under the pre-AEDPA abuse-of-the-writ doctrine. *Hill v. State of Alaska*, 297 F.3d 895, 897–98 (9th Cir. 2002); *Crouch v. Norris*, 251 F.3d 720, 723–24 (8th Cir. 2001); *Muniz v. United States*, 236 F.3d 122, 127 (2d Cir. 2001) (per curiam). Whether a petition is second or successive remains a threshold question under § 2244(b), just as it was under the pre-AEDPA regime. *Magwood v. Patterson*, 561 U.S. 320, 336–37 (2010); *Muniz*, 236 F.3d at 125. In other words, § 2244(b)'s demanding standard applies only if a petition is properly classified as second or successive.

"Second or successive" is a term of art in habeas corpus law. *Slack*, 529 U.S. at 486. The Supreme Court "has declined to interpret 'second or successive' as referring to all § 2254 applications filed second or successively in time, even when the later filings address a state-court judgment already challenged in a prior § 2254 application." *Panetti v. Quarterman*, 551 U.S. 930, 944 (2007). Instead, courts have held that in certain circumstances petitions that follow an earlier-filed petition should not be deemed second or successive because, as a categorical matter, they do not constitute an abuse of the writ. For example, if a petitioner files a first petition that the court dismisses on technical procedural grounds without reaching the merits, a subsequent petition will not be deemed second or successive even if it attacks the same judgment. *See, e.g.*, *Muniz*, 236 F.3d at 129 (first petition erroneously dismissed as untimely); *Phillips v. Seiter*, 173 F.3d 609, 610 (7th Cir. 1999) (first petition dismissed because it was filed in the wrong court); *Hamilton v. Vasquez*, 882 F.2d 1469, 1473 (9th Cir. 1989) (first petition dismissed without prejudice because it contained unexhausted claims). As a general principle, the rule that emerged is that a petition will not be deemed second or successive unless, at a minimum, an earlier-filed petition has been finally adjudicated. *Woods*, 525 F.3d at 889; 2 Hertz & Liebman § 28.3[b], at 1674–75. Thus, when a petitioner files a new petition while his first petition remains pending, courts have uniformly held that the new petition cannot be deemed second or successive. *See, e.g.*, *United States v. Sellner*, 773 F.3d 927, 931–32 (8th Cir. 2014); *Ching v. United States*, 298 F.3d 174, 177 (2d Cir. 2002).

We adopted the rule just mentioned as the law of our circuit in *Woods v. Carey*, 525 F.3d 886 (9th Cir. 2008). There, a *pro se* petitioner filed his first habeas petition in the

district court. Before that petition had been finally adjudicated, he filed a second petition in the same court. The district court dismissed the second petition on the ground that it was "second or successive" under § 2244(b)(3) and that the petitioner needed, but had not obtained, our court's authorization to file it. We held that the district court erred by regarding the new petition as second or successive because, at the time the new petition was filed, the first petition remained pending and had not been finally adjudicated. *Id.* at 888–90. We further held that, because the petitioner was proceeding *pro se*, the district court was required to construe the new petition as a motion to amend the first petition. *Id.* at 890. We vacated the district court's order dismissing the new petition and remanded for the court to exercise its discretion in deciding whether to permit amendment under Federal Rule of Civil Procedure 15. (The petitioner had already amended his first petition once, so he was not entitled to amend it again as a matter of right. *Id.* at 890 n.3.)

The reason for the rule reflected in *Woods* is simple: A petitioner who seeks to assert new claims before his first petition has been finally adjudicated is not, by any stretch, abusing the writ. He is instead attempting, as the abuse-of-the-writ doctrine requires, to litigate all available claims in a single proceeding. *See Hill*, 297 F.3d at 897–99. If the district court improperly dismisses the second-in-time petition instead of construing it as a motion to amend, the case must be remanded so that the petition can be adjudicated under the standard applicable to first petitions. *See Muniz*, 236 F.3d at 129.

In our view, the dispositive question raised by this appeal is whether our holding in *Woods* should apply not just to

district courts, but to our court as well. For the only difference between this case and *Woods* is that Goodrum filed his second-in-time petition in this court—he attached it to his June 2007 application—whereas the petitioner in *Woods* filed his second-in-time petition in the district court. We can think of no sound reason why the same obligation we imposed on district courts in *Woods* should not apply to our court (with one caveat discussed below). If a *pro se* petitioner files an application under § 2244(b)(3) requesting leave to file a new petition while his first petition remains pending, our court, too, should be obligated to construe the application as a motion to amend the pending petition. That rule is necessary because *pro se* petitioners are prone to make the same mistake made by the district court in *Woods*: They may erroneously assume that a new petition filed while their first petition remains pending constitutes a "second or successive" petition under § 2244(b)(3). And in cases involving doubt about whether a petition will be deemed second or successive, we want petitioners to seek authorization in our court first, rather than filing directly in the district court. *See Benton v. Washington*, 106 F.3d 162, 165 (7th Cir. 1996). When *pro se* petitioners follow that prudent course, they should not receive less protection than petitioners who barrel ahead in the district court.

There is one caveat, as mentioned above. When a new petition is filed in the district court, that court is presumed to know whether the earlier-filed petition remains pending. That is not always true of our court. When we receive an application for permission to file a new petition, we will not necessarily know the status of an earlier-filed petition unless the petitioner tells us. We do not have an obligation to research the status of earlier-filed petitions to determine whether a *pro se* petitioner is requesting leave to file a

petition that is not in fact second or successive. *See Pliler v. Ford*, 542 U.S. 225, 231 (2004). But when the petitioner informs us that an earlier-filed petition remains pending (as will typically be the case, since our court's form application specifically requests this information), we are no differently situated from district courts with respect to the obligation imposed by *Woods*. There is thus no reason in such cases why the rule in *Woods* should not apply to our court as well.

Upon construing an application under § 2244(b)(3) as a motion to amend, our court's obligation obviously differs from the district court's in terms of what to do next. When a district court construes a new petition as a motion to amend, that court's obligation is to rule on the motion, in accordance with the standards for permitting amendment established by Federal Rule of Civil Procedure 15. *See* 28 U.S.C. § 2242; *Woods*, 525 F.3d at 890. Our court lacks authority to rule on such a motion in the first instance. But at least two options are available to satisfy our obligation under *Woods*. We can issue an order advising the *pro se* petitioner that his application is being denied as unnecessary on the ground that the new petition he seeks leave to file is not second or successive, and that he is therefore free to file it in the district court. *See, e.g.*, *Benton*, 106 F.3d at 165 (using similar language). The petitioner presumably will do so, which will then trigger the district court's obligation under *Woods*. Alternatively, if the petitioner attaches the new petition to his application, as our Circuit Rule 22-3(a)(1) requires, we can transfer the petition to the district court under 28 U.S.C. § 2241(b) and Federal Rule of Appellate Procedure 22(a). *See Martinez-Villareal v. Stewart*, 118 F.3d 628, 634–35 (9th Cir. 1997) (per curiam), *aff'd*, 523 U.S. 637 (1998). That, too, will trigger the district court's obligation to construe the new petition as a motion to amend under *Woods*.

In light of the above, we conclude that our court erred by issuing the September 2007 order in the form that we did. Most critically, we failed to inform Goodrum that the petition he sought leave to file was not second or successive, and that he was therefore free to file it in the district court. We instead told him that his application was being denied "without prejudice to refiling" it at a later time, in the event that Goodrum received "an unfavorable disposition of the first petition that is currently pending in the district court." Our order was affirmatively misleading (albeit unintentionally so) because it suggested that Goodrum's application had been filed too early—that it would not be ripe for our court's consideration until after he had tried, but failed, to win relief on the claims already pending before the district court. That suggestion was inaccurate and, absent our corrective here, would undoubtedly have prejudiced Goodrum: By following our suggested course of action, he would have forfeited any opportunity to have his new claims adjudicated under the standard applicable to first petitions, and would instead have been forced to satisfy the more demanding standard applicable to second or successive petitions under § 2244(b)(2). Goodrum should not be the one to pay the price for our court's unforced error.

The State contends that our holding is inconsistent with the Supreme Court's decision in *Pliler*, which held that federal courts are not obligated to make case-specific assessments of the options open to a *pro se* litigant and then to advise the litigant about the wisdom of choosing one option over another. *Pliler*, 542 U.S. at 231–34. But that is not the sort of obligation we are imposing here, any more than it is the obligation we imposed on district courts in *Woods*. We are simply applying a well-settled maxim—that pleadings filed by *pro se* litigants are to be liberally

construed—to the pleadings filed in our own court. Far from requiring our court to make any case-specific advisements to *pro se* petitioners about the wisdom of pursuing one option over another, we hold only that our court has an obligation when ruling on a *pro se* petitioner's application under § 2244(b)(3) not to affirmatively mislead him as to the reason the application was denied. That is unfortunately what we did here, and remedying the error does not, as the State contends, require us "to act as counsel or paralegal" to Goodrum. *Id.* at 231.

The question that remains is what we should do to remedy the error. We think the most sensible remedy is to place Goodrum in the position he would have occupied had our court not erred in the first place. Had we properly construed his June 2007 application under § 2244(b)(3) as a motion to amend, we would have told him that he did not need our court's permission to file his new petition in the district court, and he presumably would have done that forthwith. Or, alternatively, we would have transferred his new petition to the district court. In either event, the district court would have been required to decide whether to allow amendment of Goodrum's pending first petition in accordance with the standards set by Federal Rule of Civil Procedure 15. Here, however, unlike in *Woods*, the district court would not have had the discretion to deny leave to amend. Goodrum was entitled to amend his petition as of right in June 2007 because at that point the State had not yet filed a response to his original petition. *See Mayle v. Felix*, 545 U.S. 644, 663 (2005). For that reason, we remand this case to the district court with instructions to adjudicate the petition Goodrum filed with this court in June 2007 as a first petition, not as a second or successive petition. *See Muniz*, 236 F.3d at 129.

We recognize that there are some differences between the claims alleged in Goodrum's June 2007 petition and the claims alleged in the amended petition he eventually filed in the district court in December 2011. We leave it to the district court to decide on remand whether the claims alleged in the December 2011 petition reflect permissible amendments to the claims alleged in the June 2007 petition. Goodrum is entitled to litigate the set of claims alleged in the June 2007 petition, including permissible amendments to those claims, *see Mayle*, 545 U.S. at 664; *Hebner v. McGrath*, 543 F.3d 1133, 1137–38 (9th Cir. 2008), under the standard applicable to first petitions. 28 U.S.C. § 2254(d)–(e). Whether Goodrum is entitled to relief under that standard is a matter the district court must resolve in the first instance, after conducting an evidentiary hearing if necessary.[2]

**REVERSED and REMANDED.**

---

[2] To the extent Goodrum's December 2011 petition raises claims that do not qualify as permissible amendments to the June 2007 petition, those claims are subject to the standard governing second or successive petitions under § 2244(b)(2).