Mathilde MUNIZ, Petitioner,

v.

UNITED STATES of America,
Respondent.

No. 00–3571.

United States Court of Appeals,
Second Circuit.

Submitted Nov. 30, 2000.

Decided Jan. 2, 2001.

Randolph Z. Volkell, North Bellmore, NY, by appointment of the Court, for Petitioner.

Christine Chi, Assistant United States Attorney (Mary Jo White, United States Attorney for the Southern District of New York, on the brief), New York, NY, for Respondent.

Before: CABRANES, PARKER, and STRAUB, Circuit Judges.

PER CURIAM:

Petitioner Mathilde Muniz moves pursuant to 28 U.S.C. §§ 2244(b)(3)(A) & 2255 for an order authorizing the District Court to consider a "second or successive" petition[1] for postconviction relief under 28 U.S.C. § 2255. As it happens, however, Muniz's instant petition is not, in fact, a "second or successive" petition within the meaning of §§ 2244(b)(3)(A) & 2255 at all. Rather, since her previous petition was not adjudicated on the merits but rather was dismissed on technical procedural grounds, we hold that the instant petition properly is characterized as a first petition. We therefore deny Muniz's motion for leave to file a second or successive petition as un-

necessary and transfer her petition, pursuant to 28 U.S.C. § 1631, to the District Court to be considered as a first petition.

## BACKGROUND

Following a plea of guilty, Muniz was convicted in April 1991 of conspiracy to possess with intent to distribute heroin in violation of 21 U.S.C. § 846 and sentenced to 170 months' imprisonment. On March 25, 1997, Muniz filed a *pro se* petition to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255, asserting, *inter alia,* that her plea of guilty was entered involuntarily, that she was denied effective assistance of counsel, and that her sentence was based on an amount of crack without a specific finding regarding the weight of that crack. For over one year, Muniz's petition lay dormant "[f]or various unfortunate" (but unspecified) reasons, before the District Court (Kevin T. Duffy, *Judge*) finally denied her petition on June 15, 1998, as time-barred by the one-year limitations period that was newly enacted into law by Section 105 of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214 (1996). *Muniz v. United States,* 97 Civ. 2105 (S.D.N.Y. June 15, 1998). The District Court relied upon *Peterson v. Demskie,* 107 F.3d 92, 93 (2d Cir.1997), to conclude that since Muniz's conviction became final prior to the April 24, 1996, effective date of AEDPA, she was required to file her § 2255 petition within a "reasonable time" after that date for her petition to be considered timely, and that Muniz's delay in filing her § 2255 petition was not reasonable under the circumstances of her case.

Less than ten days after the District Court's disposition, however, we made clear that notwithstanding dicta suggest-

---

1. Consistent with the terminology used in *Galtieri v. United States,* 128 F.3d 33, 36 (2d Cir.1997), we use "petition" to refer to the document seeking collateral relief, whether filed pursuant to 28 U.S.C. § 2254 or 28 U.S.C. § 2255, and "motion" to refer to the

document seeking this Court's permission to file a "second or successive" petition in district court. *See also Thomas v. Superintendent/Woodbourne Corr. Facility,* 136 F.3d 227, 228 n. 2 (2d Cir.1997).

ing the contrary in *Peterson,* all prisoners whose convictions became final prior to the effective date of AEDPA would be entitled to a full year after that date within which to file habeas corpus or § 2255 petitions. *See Ross v. Artuz,* 150 F.3d 97 (2d Cir. 1998) (petitions for habeas corpus under 28 U.S.C. § 2254); *Mickens v. United States,* 148 F.3d 145 (2d Cir.1998) (petitions to vacate, set aside, or correct a sentence under 28 U.S.C. § 2255). We noted that "[i]n the light of hindsight," *Peterson's* "reasonable time" dictum failed to provide clear guidance to prisoners and district courts, and that having been decided approximately 9½ months after the effective date of AEDPA, *Peterson* provided "little useful notice to prisoners that less than the one-year period [after that date] would be allowed." *Ross,* 150 F.3d at 101, 102. Given the strength of the life and liberty interests at stake when a prisoner files a first federal habeas or § 2255 petition, we therefore joined every other circuit to address the question by holding that all prisoners whose convictions became final before the effective date of AEDPA would be entitled to a one-year grace period after that date within which to file their habeas or § 2255 petitions. *See id.* at 102–03; *Mickens,* 148 F.3d at 148; *see also United States v. Flores,* 135 F.3d 1000, 1006 (5th Cir.1998), *cert. denied,* 525 U.S. 1091, 119 S.Ct. 846, 142 L.Ed.2d 700 (1999); *Burns v. Morton,* 134 F.3d 109, 111 (3d Cir.1998); *O'Connor v. United States,* 133 F.3d 548, 550 (7th Cir.1998); *Calderon v. United States Dist. Court,* 128 F.3d 1283, 1287 (9th Cir.1997), *cert. denied,* 522 U.S. 1099, 118 S.Ct. 899, 139 L.Ed.2d 884 (1998); *United States v. Simmonds,* 111 F.3d 737, 746 (10th Cir.1997); *Lindh v. Murphy,* 96 F.3d 856, 866 (7th Cir.1996) (en banc), *rev'd on other grounds,* 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). Under the rule set forth in *Ross* and *Mickens,* therefore, Muniz's first § 2255 petition was in fact timely, since she filed that petition before the April 24, 1997, deadline set forth by those decisions.

Muniz then proceeded to file with the District Court, *pro se,* a motion styled as an "Application for Certificate of Appealability," which was received in the District Court, according to the date stamp on that document itself, on July 29, 1998. Muniz's *pro se* application did not explicitly discuss the implications for her petition of our decisions in *Ross* and *Mickens.* However, she did explicitly challenge the District Court's denial of her petition on AEDPA limitations grounds, devoting approximately two of the five pages in her application to this argument and asserting that she had, "with due diligence and as mandated by AEDPA[,] filed her 2255 motion *within a year of the effective date.*" Application for Certificate of Appealability at 3, *Muniz v. United States,* 97 Civ. 2105 (S.D.N.Y. June 15, 1998) (filed July 29, 1998) (emphasis added). While Muniz's *pro se* application was received over one month after our decisions in *Ross* and *Mickens*—and *explicitly* argued that the District Court incorrectly dismissed her petition based on the AEDPA limitations period—the District Court summarily denied that application, by memo endorsement and without any explanation, approximately six weeks later on September 9, 1998.

The time period within which Muniz was required to file her notice of appeal—sixty days following entry of the District Court's order denying her § 2255 petition, since the United States is a party, *see* Fed. R.App.P. 4(a)(1)(B)—expired on August 15, 1998. *See Houston v. Greiner,* 174 F.3d 287, 288 (2d Cir.1999) (distinguishing among signature, filing, and entry dates for purposes of Fed R.App.P. 4(a)(1) time limits, and holding that relevant date is when judgment or order is entered on District Court docket). While Muniz's application for a certificate of appealability was filed with the District Court well before that deadline, on July 29, 1998, she formally never did file a notice of appeal from the District Court's June 15 order denying her § 2255 petition—the notice of appeal she subsequently did file on September 24, 1998, appealed from the Dis-

trict Court's denial of her application, not the denial of her § 2255 petition itself. Thereafter, we dismissed Muniz's appeal *sua sponte* for lack of appellate jurisdiction on the ground that her notice of appeal was untimely under Fed.R.App.P. 4(a)(1). *See Muniz v. United States,* No. 98–2995 (2d Cir. Jan. 8, 1999). Since then, however, we have made clear that an application for a certificate of appealability filed *pro se* within the time period required to file a notice of appeal under Fed.R.App.P. 4(a)(1) should be construed as a timely notice of appeal. *See Marmolejo v. United States,* 196 F.3d 377, 378 (2d Cir.1999) (per curiam).

Muniz filed the present motion for an order authorizing her to file a "second or successive" § 2255 petition on June 30, 2000. Title 28, section 2244(b)(3)(D) of the United States Code requires a motion for leave to file a "second or successive" habeas or § 2255 petition to be granted or denied "not later than 30 days after the filing" of the motion. For Muniz's present motion, that date was July 30, 2000. However, because this case involves a difficult and important issue "requir[ing] a published opinion that cannot reasonably be prepared within 30 days," *Thomas v. Superintendent/Woodbourne Corr. Facility,* 136 F.3d 227, 230 (2d Cir.1997) (citing *Galtieri v. United States,* 128 F.3d 33, 37 (2d Cir. 1997)), and on which we did not have the benefit of counseled briefing, we deferred final disposition of petitioner's *pro se* motion and appointed counsel for Muniz pursuant to 18 U.S.C. § 3006A(g). We directed counsel for both parties to address the following question in addition to any other meritorious issues:

> whether petitioner's petition should be considered a first petition under [AEDPA] (in light of the earlier petition's dismissal for untimeliness and petitioner's failure to file a timely notice of appeal therefrom) and, if so, whether we should transfer her petition, pursuant to 28 U.S.C. § 1631, to the District Court.

*Muniz v. United States,* No. 00–3571 (2d Cir. July 28, 2000).

## DISCUSSION

AEDPA's gatekeeping provisions for "second or successive" petitions under § 2255 permit us to certify a "second or successive" petition to be filed in a district court only if the petition contains:

> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or

> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255. This standard imposes a more rigorous limitation on the filing of second § 2255 petitions than existed prior to enactment of AEDPA. *See Galtieri,* 128 F.3d at 35–36. In the instant motion for leave to file a "second or successive" § 2255 petition, Muniz does not proffer new evidence. Rather, she argues that the Supreme Court's recent decisions in *Roe v. Flores–Ortega,* 528 U.S. 470, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000), and *Smith v. Robbins,* 528 U.S. 259, 120 S.Ct. 746, 765, 145 L.Ed.2d 756 (2000), constitute new rules of constitutional law that entitle her to collateral relief.

Given the District Court's disposition of Muniz's first § 2255 petition, however, we must address a threshold question: whether her current request for collateral relief constitutes a "second or successive" petition at all. AEDPA does not define what constitutes a "second or successive" petition. However, not every habeas corpus or § 2255 petition "that is filed after a prior one" is properly considered a "second or successive" filing in the technical sense meant by AEDPA. *Galtieri,* 128 F.3d at 37; *Raineri v. United States,* 233 F.3d 96, 99–100 (1st Cir.2000) ("[N]ot every post-conviction

motion, nor even every habeas petition, furnishes the foundation for treating a subsequent habeas petition as 'second or successive.' "); *see Slack v. McDaniel,* 529 U.S. 473, 120 S.Ct. 1595, 1604–05, 146 L.Ed.2d 542 (2000) (notwithstanding inclusion of new claims, habeas petition filed after initial petition was dismissed without prejudice for failure to exhaust remedies is not a "second or successive" petition); *Stewart v. Martinez–Villareal,* 523 U.S. 637, 644–45, 118 S.Ct. 1618, 140 L.Ed.2d 849 (1998) (petition containing incompetency to be executed claim that previously was dismissed as premature is not "second or successive"). If Muniz's current request for collateral relief is not "second or successive" within the meaning of AEDPA, then there is no need for her to obtain leave of this Court under the AEDPA gatekeeping provisions before filing her § 2255 petition in the District Court, since the petition properly would be considered a *first* petition that must be evaluated, in the first instance, by the District Court. *See Stantini v. United States,* 140 F.3d 424, 427 (2d Cir. 1998); *Esposito v. United States,* 135 F.3d 111, 114 (2d Cir.1997).

■ That question may not be answered with reference to ordinary res judicata principles, for it is well-settled that res judicata has no application in the habeas corpus or § 2255 context. *See generally Calderon v. United States Dist. Court,* 163 F.3d 530, 537–38 (9th Cir.1998) (en banc). The Supreme Court "has been very clear" that with respect to subsequent habeas or § 2255 petitions, "abuse of the writ is a substitute for res judicata, and that res judicata, strictly speaking, does not attach to the denial of a first habeas petition." *Id.* at 537 (citing *McCleskey v. Zant,* 499 U.S. 467, 479–88, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991)); *see also Raineri,* 233 F.3d at 99–100 (" 'The phrase "second or successive petition" is a term of art,' designed to avoid abuse of the writ." (quoting *Slack,* 529 U.S. at 486, 120 S.Ct. at 1605)). The rule against applying res judicata to

successive habeas petitions dates "from the earliest days of federal habeas corpus jurisdiction." *Sanders v. United States,* 373 U.S. 1, 7–8, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963); *see McCleskey,* 499 U.S. at 479, 111 S.Ct. 1454 ("At common law, res judicata did not attach to a court's denial of habeas relief."). Of course, it has been settled since at least the 1920s that the original common law rule—which "allow[ed] endless applications" for habeas relief without regard to the disposition of any prior petitions, *McCleskey,* 499 U.S. at 481, 111 S.Ct. 1454—no longer applies in federal court. *See Wong Doo v. United States,* 265 U.S. 239, 240–41, 44 S.Ct. 524, 68 L.Ed. 999 (1924); *Salinger v. Loisel,* 265 U.S. 224, 230–31, 44 S.Ct. 519, 68 L.Ed. 989 (1924). At the same time, the Supreme Court "has adhered to the principle that habeas corpus is, at its core, an equitable remedy" and—both explicitly and consistently—has "relied on the equitable nature of habeas corpus to preclude application of strict rules of res judicata." *Schlup v. Delo,* 513 U.S. 298, 319, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995); *see also Wong Doo,* 265 U.S. at 241, 44 S.Ct. 524 (holding that lower court "erred in applying the inflexible doctrine of res judicata" to dismiss second habeas petition).

■ AEDPA did not abrogate the well-settled traditional rule. As the Supreme Court noted in *Felker v. Turpin,* 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996), the restrictions on successive petitions in AEDPA "constitute a *modified* res judicata rule, *a restraint on what is called in habeas corpus practice 'abuse of the writ.'* " *Id.* at 664, 116 S.Ct. 2333 (emphasis added). While that language may "generate the illusion that *Felker* welcomed res judicata into habeas law," *Calderon,* 163 F.3d at 538, the full passage from *Felker* makes clear that AEDPA "statutorily codified the abuse of the writ doctrine," and that the Supreme Court "used the words 'modified res judicata rule' " in *Felker* "merely as a shorthand description of that doctrine." *Id.* at 538.

Indeed, importing the doctrine of res judicata into the habeas context would conflict with the statutory scheme created by AEDPA itself. Since AEDPA includes its own set of specific provisions governing the manner and extent to which "second or successive" petitions are to be reviewed, *see* 28 U.S.C. § 2244(b) & 2255, we would render these provisions largely superfluous if we concluded that AEDPA "*sub silentio* introduced res judicata into habeas law." *Calderon,* 163 F.3d at 538. Given our obligation not to interpret a statute in a manner that renders statutory language unnecessary or superfluous, *see, e.g., Ratzlaf v. United States,* 510 U.S. 135, 114 S.Ct. 655, 659, 126 L.Ed.2d 615 (1994), we conclude that the traditional rule against application of res judicata principles to habeas and § 2255 petitions has not been abrogated by AEDPA.

 We therefore answer the question of whether a petition is "second or successive" with reference to the equitable principles underlying the "abuse of the writ" doctrine. *See Felker,* 518 U.S. at 664, 116 S.Ct. 2333 (AEDPA's restrictions on "second or successive" petitions constitute "a restraint on what is called in habeas corpus practice 'abuse of the writ' "); *Calderon,* 163 F.3d at 538 ("[A]buse of the writ is a substitute for res judicata, and . . . res judicata, strictly speaking, does not attach to the denial of a first habeas petition."); *Esposito v. United States,* 135 F.3d at 113 ("Generally, we look to 'abuse of the writ' jurisprudence to inform [the] wording ['second or successive'] "). That doctrine embodies a "complex and evolving body of equitable principles informed and controlled by historical usage, statutory developments, and judicial decisions." *Felker,* 518 U.S. at 664, 116 S.Ct. 2333 (quoting *McCleskey,* 499 U.S. at 489, 111 S.Ct. 1454) (internal quotation marks omitted). And in this regard, we note an "essential distinction between a dismissal of a petition . . . for technical procedural reasons," which does not affect a petitioner's right to file a subsequent petition, "and a

dismissal on the merits," which renders any subsequent petition "second or successive" within the meaning of AEDPA. *In re Page,* 179 F.3d 1024, 1025 (7th Cir. 1999); *see Corrao v. United States,* 152 F.3d 188, 191 (2d Cir.1998) (holding that "a § 2255 petition is 'second or successive' if a prior § 2255 petition, raising claims regarding the same conviction or sentence, has been decided on the merits" (citations omitted)); *Carter v. United States,* 150 F.3d 202, 205–06 (2d Cir.1998) (since denial of first petition on grounds of procedural default "constitutes a disposition on the merits," that disposition "thus renders a subsequent [habeas or § 2255 petition] 'second or successive' for purposes of the AEDPA"); *Chambers v. United States,* 106 F.3d 472, 474 (2d Cir.1997) (petition is not "second or successive" when prior petition, though labeled as arising under 28 U.S.C. § 2255, sought relief available only under 28 U.S.C. § 2241); *Benton v. Washington,* 106 F.3d 162 (7th Cir.1996) (petition is not "second or successive" when prior petition was dismissed for failure to pay filing fee); *Camarano v. Irvin,* 98 F.3d 44, 46 (2d Cir.1996) (per curiam) (refiled habeas petition, following dismissal of prior petition without prejudice, is not "second or successive" because "there is no federal adjudication on the merits"). We recognize this "essential distinction" primarily because of the constitutional implications for prisoners of not doing so. Because "a dismissal of a first habeas petition for technical procedural reasons would bar the prisoner from ever obtaining federal habeas review," *Martinez–Villareal,* 523 U.S. at 645, 118 S.Ct. 1618; *see Page,* 179 F.3d at 1025, excusing a prior petition from "counting" as a first petition in such cases avoids serious constitutional questions arising under the Suspension Clause, U.S. CONST. art. I, § 9, cl. 2. *See Lonchar v. Thomas,* 517 U.S. 314, 324, 116 S.Ct. 1293, 134 L.Ed.2d 440 (1996) ("Dismissal of a first federal habeas petition is a particularly serious matter, for that dismissal denies the petitioner the protections of the Great Writ entirely, risking injury to an

important interest in human liberty."); *Camarano v. Irvin*, 98 F.3d at 46 ("To foreclose further habeas review in such cases would not curb abuses of the writ, but rather would bar habeas review altogether.").

In this case, we conclude that Muniz's present petition is a "first" petition, not a "second or successive" petition. The District Court's dismissal of Muniz's previous petition was erroneous, given our decisions in *Ross* and *Mickens* almost immediately thereafter. And this error was compounded by the District Court's summary denial of her *pro se* application for a certificate of appealability, which should have been treated either (1) as a motion to reconsider the dismissal, and granted, or (2) as a timely notice of appeal, which would have preserved Muniz's appellate rights. These "technical procedural" errors by the District Court led directly to the mistaken dismissal of Muniz's appeal by this Court.[2] To consider Muniz's present petition "second or successive," therefore, would require us to confront directly the Suspension Clause implications of denying Muniz an opportunity to have her first petition heard on the merits—even though it was properly filed within the time period to which she was entitled under AEDPA and our precedent, and even though Muniz timely indicated her intent to appeal by filing her *pro se* application for a certificate of appealability within the time period required to file a notice of appeal. While the Suspension Clause does not always require that a "first federal petition ... be decided on the merits and not barred procedurally," *Rodriguez v. Artuz*, 990 F.Supp. 275, 283 (S.D.N.Y.1998), *aff'd on opinion below*, 161 F.3d 763, 764 (2d Cir.1998) (per curiam), a serious constitutional question would arise if Muniz were denied the opportunity to file her first petition within the one-year grace period to which she was entitled under

*Ross* and *Mickens*. *See Page*, 179 F.3d at 1026 (noting the "possibility that a claim in no sense abusive, because it could not have been raised earlier, yet not within the dispensation that section 2244(b)(2) grants for the filing of some second or successive petitions, would have sufficient merit that the barring of it would raise an issue" under the Suspension Clause); *Triestman v. United States*, 124 F.3d 361, 377 (2d Cir.1997) (interpreting § 2255 to provide that habeas corpus under § 2241 "remains available to federal prisoners when § 2255 is not available and when the failure to allow for some form of collateral review would raise serious constitutional questions" under the Suspension Clause); *cf. Raineri*, 233 F.3d at 100–01 (holding that "when a district court, acting *sua sponte*, converts a post-conviction motion filed under some other statute or rule into a section 2255 petition without notice and an opportunity to be heard (or in the alternative, informed consent), the recharacterized motion ordinarily will not count as a 'first' habeas petition sufficient to trigger AEDPA's gatekeeping requirements"); *Adams v. United States*, 155 F.3d 582, 583–84 (2d Cir.1998) (given the potentially "disastrous" consequences of having a first petition denied on the merits, district courts may not "recharacterize a motion purportedly made under some other rule" as a § 2255 petition without either informed consent of the movant or, if the court finds that recharacterization is justified by the nature of the relief sought, offering the movant an opportunity to withdraw the motion). As *Rodriguez* explicitly recognized, "strict impossibility of filing a claim [does not exhaust the] subset of cases" in which a procedural bar "creates an unreasonable burden upon petitioners" sufficient to raise serious issues under the Suspension Clause. *Rodriguez*, 990 F.Supp. at 282. Indeed, while *Rodri-*

---

2. It is unlikely that this Court would have been aware of this procedural background at the time of the *sua sponte* dismissal of Muniz's appeal. The appeal was from the District Court's denial of her application for a certificate of appealability, but sought review of the dismissal of the § 2255 petition, which had been rendered more than sixty days earlier.

*guez* held that the one-year AEDPA limitations period does not *per se* violate the Suspension Clause, it did not so hold with respect to shorter periods, such as the one faced by Muniz in this case. *Rodriguez* also left open the possibility that "in some cases the one-year provision of the AEDPA" *itself* might be applied in a manner that "render[s] the habeas remedy 'ineffective or inadequate to test the legality of detention'" so as to raise problems under the Suspension Clause. *Id.* at 283; *see also Warren v. Garvin,* 219 F.3d 111, 113 (2d Cir.2000) (noting availability of equitable tolling as "an avenue for avoiding Suspension Clause issues" in those cases in which "strict application" of the one-year limitations period to late-filed petitions would raise Suspension Clause issues).

We therefore avoid this difficult constitutional issue by interpreting the statutory phrase "second or successive" not to encompass Muniz's petition, which was incorrectly dismissed as untimely. *See Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council,* 485 U.S. 568, 575, 108 S.Ct. 1392, 99 L.Ed.2d 645 (1988) ("Where an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress."); *Ashwander v. Tennessee Valley Auth.,* 297 U.S. 288, 346–47, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring) (court should avoid answering constitutional question if alternative basis of decision fairly presents itself); *Triestman,* 124 F.3d at 377. Accordingly, we hold that when a habeas or § 2255 petition is erroneously dismissed on AEDPA limitations period grounds, and another petition is filed that presses the dismissed claims, the subsequently-filed petition is not "second or successive" if the initial dismissal now appears to be erroneous because the law on which that dismissal was predicated is unarguably no longer good law. As noted above,

that was the case here. The District Court's dismissal of Muniz's petition was based on *Peterson,* which was superseded less than ten days later by *Ross,* 150 F.3d at 102–03, and *Mickens,* 148 F.3d at 148. And our own dismissal of Muniz's appeal was based on the failure of the District Court to construe her application for a certificate of appealability as a timely notice of appeal, a conclusion at odds with our subsequent holding in *Marmolejo,* 196 F.3d at 378.

We emphasize that our holding in this case is limited to situations akin to that faced by Muniz, in which a petitioner's first habeas or § 2255 petition was *incorrectly* dismissed as untimely. We do not reach those circumstances in which district courts have *correctly* dismissed first petitions as untimely, and we intimate no views as to whether such dismissals are appropriately analogized to technical procedural dismissals. Nor do we make any suggestion as to which *other* cases fall inside or outside the subset of cases identified in *Rodriguez* as potentially implicating issues under the Suspension Clause. We simply conclude that the particular procedural bar faced by Muniz does raise a sufficiently serious and difficult question under the Suspension Clause to justify interpreting §§ 2244 & 2255 in such a manner as to avoid that constitutional question. *Cf. Triestman,* 124 F.3d at 377.

## CONCLUSION

We therefore deny Muniz's motion for leave to file a second or successive petition as unnecessary, and transfer her § 2255 petition, pursuant to 28 U.S.C. § 1631, to the District Court to be considered as a first petition.[3]

---

**3.** As a threshold matter, the District Court should obviously consider whether Muniz's

petition is timely under AEDPA. In this connection, we note that equitable tolling might apply to her petition, *see Smith v. McGinnis,* 208 F.3d 13, 17 (2d Cir.2000) (per curiam) (holding that the one-year limitations period for habeas corpus and § 2255 petitions is not jurisdictional and, as such, may be equitably tolled under appropriate circumstances), and may "offer an avenue for avoiding Suspension Clause issues" that might otherwise arise from "strict application" of the one-year limitations period. *Warren v. Garvin,* 219 F.3d at 113–14.