10-2738-op
Quezada v. Smith

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term 2010

Submitted: September 20, 2010          Decided: October 21, 2010

Docket No. 10-2738-op

- - - - - - - - - - - - - - - - - - - -
RUDDY QUEZADA,
      Petitioner-Appellant,

            v.

JOSEPH SMITH, Warden of Shawangunk
Correctional Facility,
      Respondent-Appellee.
- - - - - - - - - - - - - - - - - - - -

Before:  NEWMAN and HALL, <u>Circuit Judges</u>, and RESTANI,[*] <u>Chief Judge</u>.

      Application, pursuant to 28 U.S.C. § 2244(b)(3), for leave to file in the District Court a second petition for a writ of habeas corpus.

      Motion granted.

> Sarah L. Cave, David B. Shanies, Hughes, Hubbard & Reed LLP, New York, N.Y., for Petitioner-Appellant.
>
> Charles J. Hynes, Kings County District Atty., Leonard Joblove, Victor Barall, Marie-Claude P. Wrenn, Asst. District Attys., Brooklyn, N.Y., for Respondent-Appellee.

---

[*]Honorable Jane A. Restani, Chief Judge of the United States Court of International Trade, sitting by designation.

JON O. NEWMAN, Circuit Judge.

The pending motion for leave of this Court to file in a district court a second petition for a writ of habeas corpus presents an initial issue of whether the petition really is a "second" petition within the meaning of 28 U.S.C. § 2244(b). In this instance, that issue turns on the extent, if any, to which this Court should reexamine the correctness of a district court's dismissal of a previous habeas corpus petition as time-barred. The motion also presents the issue of whether the motion satisfies the standards for filing a second habeas corpus petition. These matters arise on a motion by Ruddy Quezada for leave to file a habeas corpus petition challenging the validity of his 1993 New York state court conviction for second-degree murder. We conclude that reexamination of an untimeliness ruling that was made with respect to a first habeas corpus petition may occur only in limited circumstances, that such circumstances are not present in Quezada's case, and that his current petition is properly considered "second." We also conclude that Quezada has made a sufficient showing to satisfy our "gate-keeping" responsibility under 28 U.S.C. § 2244(b)(3), and we therefore grant the motion for leave to file a second petition for habeas corpus relief.

## Background

Trial. Quezada was convicted of killing José Rosado. The State's theory of the offense was that Quezada shot Rosado from a moving car while attempting to kill John Delacruz, who had been involved in an altercation with Quezada earlier in the evening of the

-2-

killing. The State's case was based primarily on the testimony of Sixto Salcedo, a friend of Delacruz. Salcedo testified that he saw the shooting and identified Quezada as the shooter. He was the only witness to do so. A police officer testified that Quezada admitted having had an altercation with Delacruz, during which each shot at the other, but that he also insisted that he had been inside a nearby building in the presence of others when Rosado was shot outside the building. The defense presented three witnesses who confirmed Quezada's version.

First habeas corpus petition. After a guilty verdict by a jury, sentencing, and direct appeal, see People v. Quezada, 218 A.D.2d 819, 631 N.Y.S.2d 59 (2d Dep't 1995), Quezada filed a habeas corpus petition on March 14, 1998, raising claims unrelated to the claims in the pending motion. That petition was dismissed as untimely under the one-year limitations period of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244(d). On appeal, this Court acknowledged that the petition was untimely, but remanded for consideration of Quezada's claim of equitable tolling, based on his alleged confinement in a special housing unit ("SHU"). See Cole v. Kuhlman, 229 F.3d 1135 (table), No. 98-2348, 2000 WL 1459028 (2d Cir. Oct. 2, 2000) (summary order).

On remand, the District Court rejected the tolling claim, noting that the record revealed that Quezada had been released from the SHU during the relevant time period. See Quezada v. Artuz, No. 98-cv-2593, 2001 WL 1262402 (E.D.N.Y. Oct. 17, 2001). That decision was not appealed.

State Court collateral attack. In March 2003, Quezada moved to vacate his conviction under New York Criminal Procedure Law § 440.10, alleging newly discovered evidence to support his claim of innocence. He contended that Salcedo, the State's key witness, had recanted his trial testimony against Quezada and that Salcedo had reported having been coerced before the trial by a local detective to accuse Quezada. Quezada also contended that a state prisoner, Freddy Caraballo, had told local detectives after the trial that he had participated in the killing for which Quezada had been arrested and that Quezada "did not pull[] the trigger." At hearings on the section 440.10 motion between 2003 and 2006, Salcedo testified that, contrary to his trial testimony, he had not seen the shooter's face. He also testified that, prior to the trial, a time when he was on parole, a detective had told him that he had to testify against Quezada or else the detective was "going to give [him] ten years." Salcedo also testified that the detective kept him confined in a hotel during the trial. Caraballo appeared at the hearing but invoked his privilege against self-incrimination.

The State trial court denied the section 440.10 motion. See People v. Quezada, 16 Misc. 3d 1113(A), 847 N.Y.S.2d 898 (table) (N.Y. Sup. Ct. 2007).

Pending habeas corpus petition. In December 2008, Quezada filed the pending habeas corpus petition, alleging the recantation by, and the coercion of, Salcedo, and the confession by Caraballo.[2] As refined

---

[2]The petition was filed by an attorney who subsequently withdrew

-4-

in the pending motion and the supporting memorandum of law, Quezada endeavors to meet the requirements for a second habeas corpus petition by contending that the newly discovered evidence shows two constitutional errors: conviction on the basis of Salcedo's perjured testimony, citing Sanders v. Sullivan, 863 F.2d 218 (2d Cir. 1988), and pretrial suppression of impeaching evidence, citing Brady v. Maryland, 373 U.S. 83 (1963), and Giglio v. United States, 405 U.S. 150 (1972).  Upon the joint request of Quezada and the State, the petition was transferred to this Court for consideration of the pending motion for leave to file the petition in the District Court.[3]

## Discussion

I. Is the Petition a "Second" Petition?

Although not raised by either party, Quezada's motion presents an

---

for medical reasons.  The District Court then appointed Quezada's current counsel to act pro bono.

[3]Quezada filed his motion for leave to file a successive habeas corpus petition on August 26, 2010.  Accordingly, the statutory deadline for decision was Monday, September 27, 2010. See 28 U.S.C. § 2244(b)(3)(D).  "However, we may 'exceed the 30-day time limit . . . where an issue requires a published opinion that cannot reasonably be prepared in 30 days . . . .'" Johnson v. United States. __ F.3d __, __, 2010 WL 3928861, at *1 n.3 (2d Cir. Oct. 8, 2010) (quoting Galtieri v. United States, 128 F.3d 33, 37 (2d Cir. 1997), abrogated in part on other grounds by Magwood v. Patterson, 130 S. Ct. 1788 (2010)).

initial issue of whether his habeas corpus petition is really a "second" petition within the meaning of 28 U.S.C. § 2244(b). Only a petition that is truly "second" (or successive) requires the permission of a court of appeals for filing in a district court. See id. § 2244(b)(3). The issue arises because of the dismissal of Quezada's first petition as untimely and some uncertainty concerning our case law with respect to dismissal of untimely habeas corpus petitions.

Before considering that case law, we outline the basic principles concerning "second" (or successive) habeas corpus petitions. AEDPA requires the permission of a court of appeals to file a second or successive habeas corpus petition in a district court. Id. A petition is second or successive if a prior petition "raising claims regarding the same conviction or sentence[] has been decided on the merits." Corrao v. United States, 152 F.3d 188, 191 (2d Cir. 1998). Generally, a petition dismissed as time-barred is considered a decision on the merits. See Murray v. Greiner, 394 F.3d 78, 81 (2d Cir. 2005); see also Villanueva v. United States, 346 F.3d 55, 58 (2d Cir. 2003) (motion under 28 U.S.C. § 2255 considered second or successive if prior motion dismissed as untimely).

Prior to Murray, however, we had cast some doubt on an absolute rule that dismissal of a time-barred petition always rendered a subsequent petition second or successive. In Muniz v. United States, 236 F.3d 122 (2d Cir. 2001), we considered a motion to file a second collateral attack following the dismissal of a first collateral attack as time-barred under unusual circumstances. AEDPA's one-year

–6–

limitations period, applicable to collateral attacks filed by both state prisoners under 28 U.S.C. § 2254 and federal prisoners under 28 U.S.C. § 2255, became effective on April 24, 1996. In Peterson v. Demskie, 107 F.3d 92, 93 (2d Cir. 1997), we ruled that as to convictions that became final before the effective date of AEDPA, a habeas corpus petition would be timely if filed within a reasonable time after the effective date. Relying on Peterson, the District Court dismissed Muniz's section 2255 motion as untimely, ruling that the filing eleven months after the effective date of AEDPA was unreasonable. See Muniz v. United States, 97 Civ. 2105 (S.D.N.Y. 1998). Less than ten days later, we replaced the Peterson "reasonable time" approach with a clear-cut rule that collateral attacks on convictions that became final before AEDPA would be deemed timely if filed within one year of AEDPA's effective date. See Ross v. Artuz, 150 F.3d 97 (2d Cir. 1998). Muniz's section 2255 motion had in fact been filed just prior to the end of the one-year interval allowed by Ross.

Instead of filing a notice of appeal from the dismissal of her section 2255 motion within the 60 days allowed where the United States is a party, see Fed. R. App. P. 4(a)(1)(B), Muniz returned to the District Court and filed within 60 days of the dismissal an Application for a Certificate of Appealability ("COA"), which the District Court denied. On a purported appeal from that denial, we dismissed the appeal for lack of a timely notice of appeal from the previous order that had dismissed her section 2255 motion. See Muniz v. United States, No. 98-2995 (2d Cir. Jan. 8, 1999). Since that

-7-

decision, however, we have ruled that an application for a COA, filed within the time for appeal from a denial of a collateral attack, should be construed as a notice of appeal, see Marmolejo v. United States, 196 F.3d 377, 378 (2d Cir. 1999), a result that would have rendered timely Muniz's appeal from the denial of her application for COA.

Confronting these unusual circumstances on Muniz's motion for leave to file a second collateral attack, we expressed concern that strict application of AEDPA's one-year limitations period might render the habeas corpus remedy "ineffective or inadequate to test the legality of detention so as to raise problems under the Suspension Clause." Muniz, 236 F.3d at 129 (citing Rodriguez v. Artuz, 990 F. Supp. 275, 283 (S.D.N.Y.), aff'd on opinion below, 161 F.3d 763 (2d Cir. 1998)) (internal quotation marks omitted). We noted that the dismissal of Muniz's section 2255 motion had been erroneous in view of our later decision in Ross and that this error had been compounded by the denial of her application for a COA, which could have been treated as a timely notice of appeal, and that these "technical procedural" errors had led to this Court's "mistaken" dismissal of her appeal.[4] See id. at 128.

To avoid the possible Suspension Clause issue, we held "that when a habeas or § 2255 petition is erroneously dismissed on AEDPA

_____

[4]We noted that "[i]t is unlikely that this Court would have been aware of the procedural background at the time of the sua sponte dismissal of Muniz's appeal." Muniz, 236 F.3d at 128 n.2.

-8-

limitations period grounds, and another petition is filed that presses the dismissed claims, the subsequently-filed petition is not 'second or successive' <u>if the initial dismissal now appears to be erroneous because the law on which that dismissal was predicated is unarguably no longer good law.</u>" <u>Id.</u> at 129 (emphasis added).

In considering the possible effect of <u>Muniz</u> on the pending application, we focus first on the words of the quoted passage that appear to limit the holding to a subsequent petition "that presses the dismissed claims." If those words are truly a part of the holding, then Quezada's pending habeas corpus petition is unquestionably "second" since it does not assert any of the claims advanced in his time-barred petition. However, if the main point of <u>Muniz</u> is to make sure that, at least in some circumstances, a court of appeals is to consider the correctness of a dismissal of a prior habeas petition as time-barred, then a petitioner would be entitled to such consideration whether or not the second try concerns the same claims that were made in the prior petition. In that event, we would have to consider what circumstances warrant a look back at a time-bar ruling that dismissed a first petition. Read broadly, the issue created by <u>Muniz</u> would be whether a court of appeals performing its gate-keeping role is (a) to review the correctness of all dismissals of prior petitions on grounds of untimeliness, or (b) to undertake such review only upon allegations of unusual procedural errors of the sort that prevented Muniz from having the merits of her first petition considered, including this Court's mistaken dismissal of an appeal from the dismissal of her first petition as time-barred.

Even if we read Muniz to apply to subsequent petitions raising new claims, we conclude that Muniz points towards the second interpretation. The Court "emphasize[d] that [its] holding in this case is limited to situations akin to that faced by Muniz . . . ." Id. The Court also said, "We simply conclude that the particular procedural bar faced by Muniz does raise a sufficiently serious and difficult question under the Suspension Clause to justify interpreting §§ 2244 & 2255 in such a manner as to avoid that constitutional question." Id. (citation omitted). Had the Court not been able to say that the dismissal of her first appeal was "mistaken," id. at 128, we doubt that it would have considered her subsequent petition not second or successive; any error in dismissing the first petition would normally have been available for correction on appeal. In addition, we note that in Murray v. Greiner, when our Court next considered whether dismissal of a time-barred first petition rendered a subsequent petition "second," it did not mention Muniz, apparently regarding the earlier decision as appropriately limited to circumstances "akin," Muniz, 236 F.3d at 129, to those faced by Muniz. Rather than undertake consideration of the correctness of the time-bar ruling that resulted in dismissal of Murray's first petition, we flatly stated:

> We hold that dismissal of a § 2254 petition for failure to comply with the one-year statute of limitations constitutes an adjudication on the merits that renders future petitions under § 2254 challenging the same conviction "second or successive" petitions under § 2244(b).

Murray, 394 F.3d at 81.

Since the dismissal of Quezada's first petition is not alleged to

–10–

have involved any procedural issues remotely comparable to those that led to a mistaken dismissal of Muniz's first petition, we will not undertake any consideration of the correctness of the District Court's unappealed dismissal of his first petition as time-barred and will regard his pending petition as "second" within the meaning of AEDPA.

II. Have the Gate-Keeping Standards Been Met?

AEDPA permits a court of appeals to authorize the filing of a second or successive habeas corpus application "only if it determines that the application makes a prima facie showing that the application satisfies the requirements of this subsection." 28 U.S.C. § 2244(b)(3)(C). The relevant requirements of subsection 2244(b), with respect to a claim, like Quezada's, that was not presented in a prior application,[5] are:

> (i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
>
> (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Id. § 2244(b)(2)(B)(i),(ii).[6]

---

[5] "A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed." 28 U.S.C. § 2244(b)(1).

[6] An alternative requirement, not asserted by Quezada, is that "the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme

-11-

Quezada endeavors to meet these requirements by alleging newly discovered evidence in support of two constitutional errors. First, he contends that constitutional error occurred because the State has left in place a conviction that rests on material perjured testimony. Second, he contends that constitutional error occurred because the State violated its Brady/Giglio obligations by not disclosing prior to trial the police coercion of Salcedo to identify Quezada as the shooter.

The State does not dispute that Quezada's claims rest on newly discovered evidence that could not have been previously discovered through the exercise of due diligence. The alleged facts concerning Salcedo's recantation and his coercion came to Quezada's attention long after his conviction became final. Thus, the first requirement of 28 U.S.C. § 2244(b)(2)(B) has been met. We turn then to Quezada's assertion of constitutional errors without which no reasonable factfinder would have found him guilty.

(a) Perjury unknown to the prosecution. Quezada first contends that the State has committed a due process violation by leaving in place a conviction that, he contends, has now been shown to rest on perjured testimony. He relies on Salcedo's admission that his crucial testimony was false and the corroboration of Salcedo's recantation by Caraballo's confession.

In disputing Quezada's claim that perjury unknown to the prosecution can amount to constitutional error, the State initially

Court, that was previously unavailable." 28 U.S.C. § 2244(b)(2)(A).

-12-

asserts an incorrect proposition of law. Asserting that the Supreme Court has not held that a conviction resting on perjury unknown to the prosecution constitutes constitutional error, the State contends that Quezada "must demonstrate that his custody is in violation of clearly established federal law, as determined by the U.S. Supreme Court." State's Memorandum of Law in Opposition to Petitioner's Application ("State's Memorandum") at 2 (citing 28 U.S.C. § 2254(d)(1)). However, whether a petitioner has satisfied that requirement is a determination required to be made by a district court before it may <u>issue</u> a writ of habeas corpus. <u>See</u> 28 U.S.C. § 2254(d)(1). Our gate-keeping responsibilities require determination only of whether the applicant has made a prima facie showing that his application "satisfies the requirements of <u>this</u> subsection, [<u>i.e.</u>, 28 U.S.C. § 2244(b)]." 28 U.S.C. § 2244(b)(3)(C) (emphasis added).

Although at first glance it might seem anomalous for a court of appeals to be permitting a district court to consider a habeas corpus petition that the district court might be unable to issue, the apparent anomaly disappears when the distinct roles of each court are understood. A court of appeals determines whether the requirements for filing a second or successive petition have been met, which means, as we have noted, only whether the petitioner has made a prima facie showing that but for constitutional error, no reasonable factfinder would have found the petitioner guilty. A district court considers the merits of the petition, and that consideration will require the district court, in the first instance, to determine whether, in rejecting a defendant's claim of constitutional error, a state court

–13–

made a decision that was contrary to, or involved an unreasonable application of, clearly established law, as determined by the Supreme Court. Our gate-keeping role does not oblige (or even permit) us to make the decision on the sometimes close question of whether a state court has made an unreasonable application of established constitutional law. The statutory scheme contemplates a decision of that question by a district court, followed by an opportunity for review of the decision in a court of appeals. Thus, the State's claimed absence of a Supreme Court decision underpinning Quezada's claim concerning a conviction resting on perjury unknown to the State is not fatal to his pending motion in this Court.

Once newly discovered evidence has been presented, the gate-keeping issues are whether Quezada has identified a constitutional error and, if so, whether he has shown by clear and convincing evidence that but for that error no reasonable jury would have found him guilty. As noted, at this stage Quezada is required only to make a prima facie showing that these two requirements have been met. To show constitutional error he relies on Sanders v. Sullivan, 863 F.2d 218 (2d Cir. 1988). We ruled in Sanders that due process is violated if a state leaves in place a criminal conviction after a credible recantation of material testimony and the recantation would "most likely" have changed the outcome. 863 F.2d at 222. Although the State contends that Salcedo's recantation is "unreliable," State's Memorandum at 3, we understand the "prima facie" standard of section 2244(b)(3)(C) to mean, as the phrase normally does, that the applicant's allegations are to be accepted as true, for purposes of

-14-

gate-keeping, unless those allegations are fanciful or otherwise demonstrably implausible. In the pending case, the recantation, whether or not ultimately credited by a fact-finder, satisfies Quezada's burden of making a prima facie showing of constitutional error, especially in view of the fact that the recantation is bolstered by Caraballo's confession to the crime for which Quezada was convicted.

Even if the standard of <u>Sanders</u> that a recantation would "most likely" have changed the outcome, 863 F.2d at 222, shows a constitutional error, it does not suffice to meet the requirement of section 2244(b)(3)(C) of clear and convincing evidence that without the error no reasonable jury would have found the applicant guilty. In the pending case, however, there can be no serious dispute that Salcedo's testimony was crucial to Quezada's conviction. Salcedo was the only witness who identified Quezada as the shooter. Quezada has made a prima facie showing that he would not have been convicted in the absence of Salcedo's testimony. We emphasize that in upholding Quezada's prima facie showing, we are not ruling on the ultimate factual or legal validity of his claim based on Salcedo's recantation.

(b) <u>Quezada's</u> Brady/Giglio <u>claim</u>.

With respect to Quezada's second claim--suppression of materials required to be produced to satisfy <u>Brady</u>/<u>Giglio</u> requirements, the State misperceives the claim when it contends that the State is not obligated to produce favorable or impeaching materials <u>after</u> trial. <u>See</u> State's Memorandum at 4. However, Quezada grounds his <u>Brady</u>/<u>Giglio</u> claim on pretrial, not post-trial, suppression. His

-15-

claim is based on non-disclosure of alleged police coercion of Salcedo--threatening him with ten years in prison if he did not accuse Quezada and confining him without justification during the trial. We are satisfied that Quezada has made a prima facie showing that the alleged suppression is constitutional error and that but for the alleged coercion, which is claimed to have induced Salcedo to falsely identify Quezada as the shooter, no reasonable jury would have convicted him. As with the claim of perjury, we make no determination that Salcedo was coerced or that, without the coercion, a valid conviction would not have been obtained. We rule only that the prima facie showing, required to satisfy our gate-keeping role, has been made.

## Conclusion

For these reasons, the motion for leave to file the pending habeas corpus petition in the District Court is granted.